**U. S. BROADCASTING CO. CORP., Plaintiff,**

v.

**NATIONAL BROADCASTING CO., INC., Defendant.**

**Civ. A. No. 77–0688–S.**

United States District Court, D. Massachusetts.

May 20, 1977.

Jordan Ring, Leslie Rudnick, Ring & Rudnick, Boston, Mass., for plaintiff.

George H. Lewald, Jr., John C. Kane, Jr., Ropes & Gray, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

This action arises out of a licensing agreement between the parties whereby defendant was to provide plaintiff with its News Information Service (NIS) in return for monthly payments. The plaintiff operates a radio station offering continuous news broadcasts to its listeners, a substantial segment of which was provided by NIS.

Relevant portions of the License Agreement entered by these parties state the following:

1. *Term.* This agreement shall be effective on execution by the parties. NBC will commence to provide the Service on the date specified for commencement of the Initial Service Period in the Schedule and, subject to earlier termination as provided herein, will continue to provide the Service until the end date of the Initial Service Period specified in the Schedule. On expiration of the Initial Service Period, the Term of this agreement shall automatically be renewed and extended for successive periods of one year, unless either party elects to terminate by written notice at least 90 days prior to the end of any year. This agreement may be terminated at any time by either party on not less than six months prior written notice. The Initial Service Period and all such extensions and renewals are herein collectively referred to as the Term.

5. *License Fee.* Licensee agrees to pay to NBC the license fee specified in the Schedule in monthly installments, payable as follows: the first (which shall include the first full calendar month and any part of the preceding calendar month from the commencement of the Initial Service Period) on execution hereof and the second and subsequent installments not later than the first day of each calendar month of the Service commencing with the second full calendar month of the Initial Service Period. Said license fee shall not be subject to escalation for any reason whatever during the Initial Service Period. If NBC intends to increase the license fee for any year after the Initial Service Period, NBC shall notify Licensee of such increased license fee not less than 120 days before the end of the Initial Service Period or the then expiring year of the Term. The license fee does not include any taxes (other than direct income taxes) imposed or levied against NBC under any statutes now in effect or hereinafter enacted upon the license or use of the Service hereunder, and Licensee will pay any such taxes and hold NBC harmless with respect thereto.

10. *Default.* The following are deemed events of default:

(a) failure of Licensee to pay promptly all license fees, which payment in no event may be later than ten (10) days after written notice from NBC;

(d) any other failure by Licensee to perform and observe Licensee's obligations hereunder unless cured by Licensee not later than ten (10) days after written notice from NBC. Upon the occurrence of any event of default, NBC shall be entitled to terminate this agreement, effective upon notice to Licensee.

12. *Notices.* Any notice required hereunder shall be in writing and shall be given by postpaid mail or prepaid telegram (a) if to NBC, at the address stated on the first page of this agreement and (b) if to Licensee, at the address specified in the Schedule, or at such other address as may be specified in writing by the party to whom the notice is given. When notice is given by mail or by telegram the date of mailing or the date of delivery to the telegraph office shall be deemed the date of giving the notice.

13. *Entire Agreement.* This constitutes the entire agreement between Licensee and NBC as to the subject matter hereof, all prior understandings being merged herein. All questions with respect to this agreement shall be determined in accordance with the internal laws of the State of New York. The waiver of any breach of this agreement must be in writing to be effective, and waiver of any breach shall not constitute waiver of any subsequent breach. This agreement may not

be changed, modified, renewed, extended or discharged, except as specifically provided herein or by an agreement in writing signed by the parties hereto. In the event of any inconsistency between the provisions of this agreement and the attached Schedule, the provisions of the Schedule will be controlling.

The License Agreement Schedule set forth the plaintiff's name and its address, "c/o Ring and Rudnick, 89 State Street, Boston, Massachusetts."

Defendant notified all of its subscribers, by letter dated November 10, 1976, of its intention to terminate NIS, effective May 29, 1977. The letter cited Paragraph 1 of the agreement as authorizing such termination on six months notice. It was sent to the president of the plaintiff's radio station, instead of to the address specified in the agreement. Counsel for plaintiff acknowledged receipt of the November 10 letter on November 22, 1976 in a letter demanding a retraction of the notice.

Again by letter addressed to the president of plaintiff's radio station, but with a copy to plaintiff's counsel, defendant advised plaintiff on February 25, 1977, of its intention to terminate within ten days for failure to pay license fees pursuant to Paragraph 10 of the agreement. A second letter to the same effect was mailed on March 2, 1977, this time addressed to the precise address set forth in the agreement schedule, despite the fact that since the execution of the agreement plaintiff's counsel had moved to a new address. By telex on March 1, 1977, plaintiff's counsel replied to the February 25 letter.

Plaintiff urges that defendant's notices, on November 10, 1976 and on February 25, 1977, of termination were fatally deficient because they were sent to an address other than the one specified in the agreement. In addition, the March 2 notice, plaintiff claims, is in violation of a temporary restraining order issued on that same day by the state court then hearing the dispute.

Plaintiff demands injunctive relief and damages for breach of contract, violation of the Massachusetts Consumer Protection Statute and defamation. The defendant counterclaims for amounts due and unpaid under the licensing agreement. Plaintiff's motion for a preliminary injunction has been denied by me. The case is before me on the defendant's motion for summary judgment on the plaintiff's claims. There is no motion pending which relates to the counterclaim.

In accordance with Paragraph 13 of the agreement, the law to be applied in construing the contract in this case is the "internal law of the State of New York." *See Maxwell Shapiro Woolen Co. v. Amerotron Corp.,* 339 Mass. 252, 257–258, 158 N.E.2d 875 (1959).

█ Under New York law the address to which notice is sent is immaterial even if it varies from the address specified in a contract if actual notice is received. *Ives v. Mars Metal Corp.,* 23 Misc.2d 1015, 196 N.Y. S.2d 247 (Sup.Ct.N.Y.Co.1960). Here it is clear that plaintiff and plaintiff's counsel timely received both notices and it would be "hypertechnical in the extreme" to hold that notice actually received was ineffective. *Ives, supra* at 1017, 196 N.Y.S.2d 247.

The only facts about which there is dispute in this action center on certain oral assurances plaintiff claims the defendant made. First, plaintiff alleges defendant made statements during negotiations to the effect that NBC would not terminate, where there was no default, during the two year "Initial Service Period." Second, plaintiff claims defendant orally waived license fee payments due from plaintiff.

█ Under New York law the terms of a written contract cannot be varied by evidence of a collateral agreement contradicting its express or implied provisions, though parol evidence is admissible to clarify ambiguous terms. *John W. Cowper Co. v. CDC–Troy, Inc.,* 50 A.D.2d 1076, 376 N.Y. S.2d 754 (4th Dept. 1975).

█ The intention of the parties here to incorporate their full agreement in writing is clearly set forth by Paragraph 13 of the Licensing Agreement.

Under that agreement (Paragraph 1) it is open to either party to terminate on six months written notice even during the "Initial Service Period." The section is unambiguous. Since evidence of any contrary oral agreement is barred by the parol evidence rule, the existence of a dispute concerning it does not prevent the entry of summary judgment.

The same is true of evidence of oral assurances that NBC would not take action against plaintiff for defaulting on its fee payments. The agreement states clearly in Paragraph 13 that a waiver of any breach must be in writing to be effective. The only written waiver appears in NBC's November 10, 1976 letter of termination where it stated that license fee payments would be waived "for all subscribers who are current in their accounts through October 31, 1976."

■ Defendant offers in the affidavit of its vice president and general manager, Robert Mounty, evidence that plaintiff's payments were in arrears at the end of October 1976.[1] This averment is uncontradicted by plaintiff; plaintiff in fact admits in its answer to defendant's counterclaim that it has failed to make payments. Since the plaintiff was not current in its accounts through October 31, 1977, the waiver did not apply to plaintiff and defendant's ten-day termination notice to plaintiff on February 25, 1977 was not a breach of the agreement.

Plaintiff's argument that evidence of the alleged oral representations is nevertheless material to an issue of fraud is without merit. Plaintiff has not alleged fraud as the basis of any cause of action. See Fed.R. Civ.P. 9(b). Even if plaintiff had so pleaded, no statements asserted in plaintiff's af-

fidavits to have been made by defendant's agents rise to the level of fraud or amount to more than "expression of strong belief," promissory in nature and not actionable. *Yerid v. Mason,* 341 Mass. 527, 529–30, 170 N.E.2d 718, 719–20 (1960). *Accord, Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.,* 51 A.D.2d 140, 379 N.Y. S.2d 873 (4th Dept. 1976).

Defendant's motion for summary judgment on Count I of the complaint, for breach of contract, is ALLOWED.

■ Count II of the complaint asserts a claim under M.G.L. c. 93A and Regulations issued by the Attorney General under that chapter.

That law does not apply to:

"trade or commerce of any person of whose gross revenue at least twenty per cent is derived from transactions in interstate commerce, excepting however transactions and actions which occur primarily and substantially within the commonwealth . . ."

M.G.L. c. 93A § 3(1)(b).

Defendant, who carries the burden of proving an exemption under Chapter 93A, M.G.L. c. 93A § 3(2), has demonstrated through the affidavits of its Vice President of Administration and the Vice President in charge of NIS that NBC and the transaction in question here fall within the terms of § 3(1)(b).[2] The "unfair and deceptive acts and practices" alleged by plaintiff occurred, if at all, "primarily and substantially" in New York, not Massachusetts. Neither this fact nor the fact that NBC's gross revenue is almost completely derived from transactions in interstate commerce is contradicted in plaintiff's affidavits.[3]

1. Plaintiff moved to strike portions of Robert Mounty's affidavit, claiming he lacked personal knowledge, including paragraphs 17, 23, 24 and 26 which state that plaintiff is in arrears in its payments. Given the affiant's involvement with NIS described in paragraphs 1 and 2 of the affidavit, plaintiff's motion is not well taken and is denied.

2. Again (see footnote 1), plaintiff's claim that Robert Mounty is without personal knowledge,

so far it pertains to facts relevant here, is without merit. Mr. Mounty, as Administrator of NIS and participant in negotiations, obviously can testify to where the relevant transactions and actions occurred.

3. Even if the defendant were not exempt, nothing alleged in the complaint or set forth in plaintiff's affidavits would constitute a violation of M.G.L. c. 93A. The standard for determining whether such a violation has occurred

Defendant's motion for summary judgment on plaintiff's Count II is, accordingly, ALLOWED.

Plaintiff's Count III, a defamation claim purportedly based on NBC's issuance of a press release indicating its intention to phase out NIS for all subscribers by mid-1977, is clearly without merit. The words of the release are "unambiguously not defamatory on their face," and do not even mention plaintiff. Plaintiff has shown no attendant circumstances proving their defamatory nature. *Sharrott v. Housing Innovations, Inc.*, 365 Mass. 141, 310 N.E. 343, 346 (1974).

Defendant's motion for summary judgment on Count III is ALLOWED.

No motion having been made with reference to defendant's counterclaim, that issue remains pending.

I find that there is no just cause for delay in the entry of a final judgment dismissing plaintiff's claims under Fed.R.Civ.P. 54(b) and, accordingly, order the entry of such judgment.

is articulated in *PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915, 917–918 (1975), citing 29 Fed.Reg. 8325, 8355 (1964).