**COMPUTER SYSTEMS ENGINEERING, INC., Plaintiff,**

v.

**QANTEL CORPORATION, Defendant.**

Civ. A. No. 79–1588–K.

United States District Court,
D. Massachusetts.

July 8, 1983.
As Modified Aug. 29, 1983.

Thomas K. Christo, Christo & Watson, North Hampton, N.H., for plaintiff.

Ropes & Gray, Thomas G. Dignan, Jr., Roscoe Trimmier, Boston, Mass., for defendant.

## Opinion

KEETON, District Judge:

Plaintiff, Computer Systems Engineering, Inc. ("CSE") brought suit against defendant, Qantel Corporation ("Qantel"), for breach of contract, fraud, and unfair and deceptive acts as defined in Mass.Gen.Laws ch. 93A, § 2, and for multiple damages and attorneys fees as provided by *id.,* § 11. The ch. 93A claim was tried before the court, simultaneously with jury trial of the breach of contract and fraud claims. The jury found unanimously in response to special interrogatories that (1) Qantel committed a breach of its distributorship contract with CSE; (2) Qantel made fraudulent representations to induce CSE to enter into the original agreement of April 16, 1976 or a subsequent letter agreement of August 1, 1977; (3) losses caused by breach of contract and fraud are identical, and damages amount to $2,336,742; and (4) punitive damages of $15,000,000 should be awarded against Qantel for fraud.

Plaintiff is entitled to judgment on the verdict, on the breach of contract and fraud claims, for compensatory damages of $2,336,742. Before directing entry of final judgment, however, I must determine (1) whether Massachusetts or California law governs the claim for punitive damages and (2) whether a ch. 93A remedy is available to CSE and, if so, in what form and amount.

The parties agree that California law governs the contract claim. Contested choice of law issues involve CSE's fraud claim for punitive damages and CSE's ch. 93A claim.

I conclude (1) that under Massachusetts choice of law rules, Massachusetts law governs both the fraud claim and the ch. 93A claim; (2) that the jury's finding of punitive damages must be disregarded because punitive damages cannot be awarded in this case under Massachusetts law; and (3) that on the ch. 93A claim CSE is entitled to judgment in the amount of $4,673,484 plus attorney fees (with provisions against overlapping recovery on the various claims). Thus the total allowable recovery on all claims combined will be $4,673,484 plus attorney fees and costs.

## I.

Under California law, punitive damages may be awarded for an intentional misrepresentation. Cal.Civ.Code § 3294(a).

No comparable statutory provision exists in Massachusetts law.

■ Since subject matter jurisdiction in this action is founded upon diversity, the court must follow the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Massachusetts conflicts law therefore governs which law should apply on the issue of punitive damages.

It is clear that Massachusetts courts have begun to apply a "more functional" approach to choice of law issues in lieu of the traditional doctrine of *lex loci delicti. See, e.g., Choate, Hall & Stewart v. S.C.A. Services, Inc.,* 378 Mass. 535, 392 N.E.2d 1045 (1979); *Pevoski v. Pevoski,* 371 Mass. 358, 358 N.E.2d 416 (1976). Although the Supreme Judicial Court has not explicitly adopted the position of the Restatement (Second) of Conflict of Laws on tort claims, it has indicated that it would look to the law of the jurisdiction having the strongest interest in resolving the particular issue presented. *Pevoski, supra; see Engine Specialties, Inc. v. Bombadier Ltd.,* 605 F.2d 1, 19 (1st Cir.1979), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980); *Schulhof v. Northeast Cellulose, Inc.,* 545 F.Supp. 1200, 1203 (D.Mass.1982). I conclude that a Massachusetts court would apply a test quite similar to if not identical with that of the *Restatement (Second)* to determine the law applicable in this case.

The parties agree that the general provision of the *Restatement (Second) of Conflict of Laws* most relevant to this inquiry is Section 148. Subsection (1) of that provision is limited to the situation where a plaintiff's action in reliance occurs exclusively in the state in which the misrepresentations were made and received. Comment d. Subsection (2) applies to circumstances in which a plaintiff's action in reliance takes place in two or more states, such as where formation of the contract and performance occur in different states. *Id.* Subsection (2) lists six factors that the forum court should consider in determining the state which, as to a particular issue, has the most significant relationship to the occurrences and the parties.

Under the *Restatement (Second)* approach, it is first necessary to identify the place or places where the relevant events and contacts between the parties took place. With minor exceptions, the significant occurrences and contacts in this instance all took place in either California or Massachusetts. The fraudulent representations that induced CSE to sign the distributorship contract of April 16, 1976, or enter into the letter agreement dated August 1, 1977, occurred partly in California and partly in Massachusetts. Among those representations were statements in Qantel brochures as to the nature of Qantel's product—brochures that were sent from Qantel's headquarters in California to CSE's headquarters in Burlington, Massachusetts. These brochures were intended primarily for distribution to "end-users" (customers of the distributors). They were also part of Qantel's representations to CSE, however, since they were delivered to CSE by Qantel along with oral representations about Qantel's and CSE's respective roles in delivering to the end-user the product represented in the brochures. The product was a combination of computer hardware, software, and services. Qantel representatives also travelled to Massachusetts for the purpose initially of negotiating a contract between CSE and Qantel, and subsequently of encouraging CSE to continue its contractual obligations and renew the Qantel-CSE distributorship agreement. The evidence supports the conclusion that fraudulent representations were communicated at these personal meetings in Massachusetts. I take account also of evidence of misrepresentations in telephone communications involving both states, as well as misrepresentations received in California by CSE representatives who travelled to Qantel's headquarters there.

As these contacts show, contrary to Qantel's contention, Subsection (1) of the *Restatement (Second) of Conflict of Laws* § 148 clearly does not apply here. Since communication of the misrepresentations

was divided between California and Massachusetts, Subsection (1) does not offer any guidance as to which state's law should govern. Turning to Subsection (2), I proceed to consider the relevant factors for determining the state with the "most significant relationship" to the transactions and the parties.

The first factor for consideration is the place or places where the plaintiff acted in reliance upon the defendant's representations. CSE's initial act of reliance consisted of entering into the distributorship contract of April 16, 1976. Although the contract was formally executed in California, negotiations leading to its formation took place in Massachusetts. Further acts of reliance occurred when CSE entered into the letter agreement of August 1, 1977, executed by Qantel on November 18, 1977 in California and mailed to CSE in Massachusetts. I find, however, that the major part of CSE's reliance took place in Massachusetts, consisting principally of its contractual performance under the Qantel distributorship contract, which gave CSE an exclusive sales territory within Massachusetts. According to the *Restatement (Second)* approach, "[w]hen a major part of a plaintiff's action in reliance takes place in one state and a lesser part in another, the first state has a more important contact with the occurrence than does the latter." Comment f. Moreover, the significance of the place of plaintiff's action in reliance is enhanced when this place is pursuant to an agreement between the parties or otherwise contemplated by the defendant. *Id.* This factor weighs heavily in favor of treating Massachusetts as the state having the most significant relationship to the transactions involved.

The second factor under the *Restatement (Second)* approach relates to the place where the representations were first communicated to the plaintiff; the third factor, to the place where the defendant made the false representations. These factors are of approximately equal importance. I find that the major aspects of the misrepresentations were first communicated to CSE in Massachusetts, in the course of personal meetings or by mail and telephone communications into the state. Taking account of both the Qantel brochures and the oral statements by Qantel representatives, I find that the place where the defendant made the representations was divided nearly evenly between Massachusetts and California. Assigning equal weight to these factors, I conclude that Massachusetts contacts are more significant than California contacts.

The remaining factors to be considered under the *Restatement (Second)* test also support a determination that the interests of Massachusetts outweigh those of California. With respect to the fourth factor, CSE is a corporation with its principal place of business in Massachusetts. The place of business of the plaintiff is significant because any financial loss is likely to be of greatest concern to the state having the closest relationship to the person or entity harmed. The fifth factor, which focuses on the location of any tangible thing that was the subject of the transaction between the parties, is not significant here. I have already addressed the sixth factor, namely, the place where CSE was to render performance under the contract.

Weighing the relative interests of the states involved, I conclude that a Massachusetts court would apply Massachusetts law to CSE's claims arising from Qantel's fraudulent representations.

I reject CSE's contention that, even if Massachusetts law governs compensatory damages, California law should apply to punitive damages. CSE contends that California has a specific interest in deterring fraud by its domiciliary corporations that outweighs any Massachusetts interest in disallowing punitive damages. It is true that California has a long-standing policy of permitting punitive damages for misrepresentations of the kind that Qantel made here. *See* Cal.Civ.Code § 3294(a); *see also Glovatorium Inc. v. NCR Corp.,* 684 F.2d 658 (9th Cir.1982). Massachusetts policy with respect to punitive damages, however, is more restrictive. The general rule in

Massachusetts is that punitive damages may not be awarded unless expressly allowed by statute. *See, e.g., Caperci v. Huntoon,* 397 F.2d 799, 801 (1st Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968); *City of Lowell v. Massachusetts Bonding & Insurance Co.,* 313 Mass. 257, 269, 47 N.E.2d 265 (1943). States that disallow punitive damages generally do so, among other reasons, to protect defendants from excessive liability. *See, e.g., Schulhof, supra* at 1206. Arguably, no comparable state interest should limit recovery by a Massachusetts corporation from a foreign corporation. However, Massachusetts has a more significant interest in applying its law here than merely preventing a windfall to one of its domiciliaries. Under the *Restatement (Second)* approach, the court could apply part of one state's law on the particular issue of punitive damages, while applying part of another state's law on compensatory damages. There is a danger, however, "[w]hen a court combines elements of the laws of different states [that] it may upset the delicate balance achieved by legislative compromise." *Schulof, supra* at 1207–08. Here, Massachusetts has provided by statute for award of punitive damages in specific instances, none of which applies to the type of conduct by Qantel that gave rise to CSE's claims. Moreover, Massachusetts has a significant interest in the uniformity and predictability of its law. To apply another state's law on punitive damages would carve out an exemption from the restrictive Massachusetts rule in certain types of cases, even though Massachusetts would apply its own law on compensatory damages. Bifurcating the issues of punitive and compensatory damages in this manner would discriminate against a class of nonresident defendants, and upset the legislative balance achieved by Massachusetts precedents and statutes regarding punitive damages. I conclude that the same law should be applied to both punitive and compensatory damages, and that Massachusetts' interests outweigh those of California. Accordingly, the jury's award of punitive damages against Qantel must be disregarded.

## II.

Claims of unfair or deceptive acts or practices, under M.G.L. ch. 93A, may be founded on acts that are associated with breach of contract—*see Burnham v. Mark IV Homes, Inc.,* 387 Mass. 575, 581, 441 N.E.2d 1027, 1031 (1982); *Linthicum v. Archambault,* 379 Mass. 381, 398 N.E.2d 482 (1979)—or tort—*see* Part IV *infra*—or both contract and tort, or neither—*see Heller v. Silverbranch Construction Co.,* 376 Mass. 621, 382 N.E.2d 1065 (1978); *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975) (noting that § 9, M.G.L. ch. 93A, action is "neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action, such as tort for fraud and deceit"). *See also, Commonwealth v. Hale,* 618 F.2d 143, 146 (1st Cir.1980); Attorney General's Rules and Regulations, 20 Mass.Code of Regs. § 3.16 ("an act or practice is a violation of chapter 93A, section 2 if: (1) It is oppressive or otherwise unconscionable in any respect . . ."). In the present case, both breach of contract and tort have been proved. As already noted, the parties agree that California law applies to the breach of contract claim. In Part I, I have concluded that Massachusetts courts would apply Massachusetts law to a tort claim in this case. In these circumstances, would Massachusetts courts apply ch. 93A to this case, or instead look to California law for any statutes or precedents showing that California does or does not have a body of law comparable to ch. 93A?

One might argue that the answer should depend on whether contract-like or instead tort-like elements of the ch. 93A claim predominate on the facts of the particular case. If such a test were to be applied, I would conclude that tort-like elements predominate here. CSE's claim for compensatory damages under ch. 93A is merely one more ground for a recovery claimed also on grounds of breach of contract and fraud. A more significant addition to the complaint, supplied by the ch. 93A claim, is that CSE

claims multiple damages for willful or knowing violation of section 2 of ch. 93A. Such a claim and the requested remedy are more closely analogous to tort than to contract claims and remedies. Thus, I conclude that if such a particular-case choice-of-law rule were applied, Massachusetts courts would apply Massachusetts law (ch. 93A) to the present case.

I am guided to the same conclusion by a second approach to this issue. I believe it likely that Massachusetts courts will adopt a rule that ch. 93A claims, and especially those for multiple damages, though sometimes associated with breach of contract, are nevertheless on the whole more closely analogous to tort. Thus, for choice of law purposes, ch. 93A claims should be treated uniformly, rather than on a case-by-case basis, in the same way as tort claims. This conclusion is supported also by the fact that the stated and apparent objectives of the legislature in enacting ch. 93A are more compatible with tort than contract theory.

Though finding no precedent directly in point, I conclude, in reliance on choice of law precedents most closely analogous, that Massachusetts courts would apply M.G.L. ch. 93A to the present case.

### III.

■ Section 3 of M.G.L. ch. 93A provides in relevant part:

(1) Nothing in this chapter shall apply to

  *   *   *   *   *   *

(b) trade or commerce of any person of whose gross income at least twenty percent is derived from transactions in interstate commerce, excepting however transactions and actions which (i) occur primarily and substantially within the commonwealth . . . .

At trial, the parties agreed that Qantel derived in excess of 20% of its gross revenues from transactions in interstate commerce, and the evidence clearly supported this view. The question remains whether the transactions and actions involved in this case occurred "primarily and substantially"

in Massachusetts. The Act places the burden of proving an exemption from its provisions upon the person seeking the exemption. M.G.L. ch. 93A, § 3(2). To establish entitlement to an exemption, a defendant has the burden of proving "not only that it derives twenty percent or more of its gross revenue from interstate commerce, but also that the 'transactions and actions' complained of did *not* occur 'primarily and substantially within the commonwealth.'" *Burnham, supra* 387 Mass. at 580, 441 N.E.2d at 1030.

The meaning of the phrase "primarily and substantially" is not yet well-defined by case law. As the Supreme Judicial Court stated in *Burnham, id.,* the legislature's use of this phrase "precludes, at a minimum, a construction of § 3 that would allow a c. 93A action in every instance in which the defendant's transactions and actions 'within the commonwealth' would subject him to jurisdiction under our long-arm statute, G.L. c. 223A." In *Burnham* the Attorney General submitted an amicus brief requesting the court to set forth a list of factors similar to those considered in choice of law questions under the *Restatement (Second)* approach, to be used in determining whether the "primarily and substantially" requirement was satisfied. *Id.* at 580, n. 9, 441 N.E.2d at 1031 n. 9. The Attorney General noted that several federal courts had apparently adopted a variant of such an analysis in interpreting the provisions of § 3(1)(b). *Id.* *See, e.g., Boston Super Tools, Inc. v. RW Technologies, Inc.,* 467 F.Supp. 558 (D.Mass.1979); *U.S. Broadcasting v. National Broadcasting Co.,* 439 F.Supp. 8 (D.Mass.1977). The court resolved the issues raised in *Burnham,* however, without considering explicitly the Attorney General's proposals.

Although the transactions and actions bearing on the choice of law issue in Part I, *supra,* are also relevant here, I reject CSE's contention that there can be no exemption under ch. 93A merely because California law was found inapplicable. Moreover, the relatively few decisions interpreting the "primarily and substantially" requirement

of § 3 can all be distinguished from the facts in this case. *See, e.g., Burnham, supra; Boston Super Tools, supra.* In the present case, the facts reveal that more of the relevant transactions and actions occurred within Massachusetts than appeared on the record in *Boston Super Tools,* upon which Qantel relies heavily. Cases at the opposite extreme such as *Burnham,* where the court found that the transactions occurred entirely within Massachusetts, are also inapposite. Here the actions amounting to unfair and deceptive acts or practices occurred partly in California and partly in Massachusetts. The communication of the misrepresentations to CSE occurred mainly in Massachusetts. Taking account of all representations and acts relevant to CSE's claims, those occurring entirely in California or Massachusetts and those involving communications between the two states, I find that Qantel has failed to meet its burden of proving an exemption under § 3. Expressed differently, Qantel has not proved that the relevant transactions and actions "did *not* occur 'primarily and substantially within the commonwealth,'" *Burnham, supra* 387 Mass. at 580, 441 N.E.2d at 1030. Accordingly, I conclude that ch. 93A applies to the present case.

## IV.

■ Section 2 of ch. 93A proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." and incorporates by reference the interpretation given to these terms by the Federal Trade Commission under the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). A valid common law claim for misrepresentation ordinarily furnishes a basis for liability under M.G.L. ch. 93A. *Levings v. Forbes & Wallace, Inc.,* 8 Mass.App.Ct. 498, 504, 396 N.E.2d 149, 154 (1979).

■ Has CSE, by proving fraud, proved unfair and deceptive acts or practices of Qantel in this case?

At trial, evidence was received on all of CSE's claims simultaneously. Although initially CSE asserted a right to jury trial of the ch. 93A claim, that assertion was withdrawn before the case was submitted to the jury. The case was tried with the explicit understanding that the breach of contract and fraud claims were being submitted to the jury, that the ch. 93A claim was being tried to the court, and that, if free to do so under applicable law, the court might choose to regard the jury as an advisory jury as to any issues of the ch. 93A claim identical with those submitted to the jury on the breach of contract and fraud claims.

Under applicable law, does the jury finding of fraud conclusively establish a violation of ch. 93A, § 2 on grounds analogous to issue preclusion or for any other reason? If not, is the trial court nevertheless free to adopt the jury finding without independently assessing the evidence as fact finder rather than merely determining whether the finding is supported by evidence? Or is the trial court free to treat the finding as advisory, but with a responsibility nevertheless for acting as fact finder?

On two independent grounds, I conclude that CSE has proved that Qantel violated ch. 93A, § 2.

First. The evidence received before the jury in this case, supporting the jury finding of fraud, is precisely the same evidence that is before the court on the claim of violation of ch. 93A, § 2. In these circumstances, as fact finder if I am permitted to function as such, I find a violation by Qantel of section 2. That is, viewing the same evidence but entirely independently of the jury finding, I find that Qantel, with reckless disregard for truth or falsity, made false representations of the state of development of its software product, referred to as "SOLUTIONS," both before the initial contract was signed in 1976 and again before the extension was agreed to in 1977; that these representations were highly material to the scope, difficulty, and expense of functioning as a distributor of the Qantel hardware and software in a context in which an end-user was expected to receive a useable package without the necessity of expensive adaptation; and that CSE reasonably relied upon these representations to

its detriment. I conclude that this conduct constituted a violation of ch. 93A, § 2.

■ Second. Under Massachusetts law, a plaintiff has no right to a trial by jury of a ch. 93A claim. *See Nei v. Burley,* 388 Mass. 307, 315, 446 N.E.2d 674, 679 (1983). A trial court may, however, submit questions to the jury to assist the court in deciding issues of fact bearing on such a claim. *Id.; see DiMarzo v. American Mutual Insurance Co.,* 389 Mass. 85, 91, 449 N.E.2d 1189, 1194–95 (1983) (noting that the trial judge "adopted the answers to the special questions and made findings of fact consistent with the jury's answers"). The opinions in *Nei, supra,* and *DiMarzo, supra,* although not directly determining this issue, strongly suggest that under Massachusetts law the trial court will be permitted to adopt the jury finding in these circumstances. I choose to do so here.

In these circumstances, I need not consider whether a federal court is bound to follow the Massachusetts law on the right to jury trial and the use of jury findings as advisory. *See Byrd v. Blueridge Rural Electric Cooperative,* 356 U.S. 525, 530, 78 S.Ct. 893, 897, 2 L.Ed.2d 953 (1958) (federal court sitting in diversity not bound to apply state rule requiring judge, rather than jury, to decide factual issues in workmen's compensation case). Even if the federal practice of jury determination of disputed factual questions were controlling, it is clear that a plaintiff may waive the right to a jury trial by withdrawing a demand. Under federal law, it would nevertheless be within the trial judge's discretion to treat the jury finding as advisory. A literal construction of Fed.R.Civ.P. 39(c) would limit use of an advisory jury to cases that are not triable of right to a jury. Adopting this construction, some courts have held that if a party has waived the right to a jury trial, the court lacks authority to use an advisory jury on its own initiative. *See, e.g., Hargrove v. American Central Ins. Co.,* 125 F.2d 225 (10th Cir.1942). Other courts have interpreted Rule 39(c) differently and have held that an advisory jury may be used where a right to jury trial has been waived.

*See, e.g., (American) Lumbermens Mutual Casualty Co. v. Timms & Howard, Inc.,* 108 F.2d 497 (2d Cir.1939). Agreeing with the approach of the Second Circuit, one noted commentator has observed that there is at least as much merit to the trial court's use of an advisory jury for trial of legal issues for which a jury right has been waived as for trial of legal or equitable issues for which no jury right exists. 5 Moore's Federal Practice ¶ 39.10[1], at 39–35 to 39–36; *see also* 9 Wright & Miller, Federal Practice and Procedure, § 2335, at 128. Indeed, it is precisely on legal, rather than equitable issues, that a jury is likely to be most helpful. Moreover, use of a jury in an advisory capacity does not deprive the parties of what is in effect a court trial, since the jury acts merely as an aid to the court and the judge bears ultimate responsibility for the findings. *See id.* I conclude that if federal law is to govern this issue in the present case, the trial court is permitted to accept jury findings as advisory.

■ Treating the jury's findings in this case as advisory, I make the same finding of fraud as did the jury, and I conclude that this finding establishes a violation of ch. 93A, § 2, by Qantel.

Having found a violation of ch. 93A, § 2 on these independent grounds, I need not consider whether, once having submitted the fraud issue to the jury, it would be impermissible for a trial court to make findings inconsistent with jury findings supported by the evidence.

For the foregoing reasons, I conclude that CSE has established a valid claim against Qantel for violation of ch. 93A, § 2.

## V.

■ Section 11 of ch. 93A allows recovery of multiple damages "if the court finds that the act or practice was a willful or knowing violation of said section two" of ch. 93A. What, precisely, is the fact question that determines CSE's claim for multiple damages under this provision?

The statutory term "knowing" refers to a state of mind existing at the time of acting.

But what is it that CSE must prove that Qantel knew when acting, in order to establish "knowing violation of said section two" of ch. 93A?

The term "willful" also, both in this statutory context and in ordinary usage, is most reasonably interpreted as referring to a state of mind existing at the time of acting—a state of mind involving "culpability" at least, *cf. International Fidelity Insurance Co., v. Wilson,* 387 Mass. 841, 853, 856, 443 N.E.2d 1308, 1316–1317 (1983)—and perhaps some more precisely defined state of mind. Negligence does not satisfy this test. *See, e.g., id.* at 854–55, 443 N.E.2d at 1316–17; *Linthicum, supra,* 379 Mass. at 388, 398 N.E.2d at 487–88; *Heller, supra,* 376 Mass. at 627–28, 382 N.E.2d at 1070; *Jeffco Fibres, Inc. v. Dario Diesel Service,* 13 Mass.App.Ct. 1029, 1031, 433 N.E.2d 918, 921 (1982) ("misrepresentation was innocent or at worst negligent"); *Lynn v. Nashawaty,* 14 Mass.App.Ct.Adv.Sh. 1453, 423 N.E.2d 1052 (1981). Negligence—even gross negligence—is determined by an objective standard. In determining negligence, we use the hypothetical conduct of a creature of the law—an ordinarily prudent person—as a standard for comparison with the conduct being judged. By that standard, one who should have known a fact but did not is negligent. In contrast, the standard prescribed by "willful," as well as the standard prescribed by "knowing," is a state-of-mind standard that requires the fact finder to determine not whether a defendant (or its agents when, as here, the defendant is a corporation) should have had that state of mind, but whether in fact the defendant (or its agents) did have that state of mind. Even though evidence that an ordinarily prudent person would have known, and that the defendant should have known, may be received as circumstantial evidence that the defendant did know, the question the fact finder must answer is whether in fact the defendant did know.

Thus, to prove either willful violation or knowing violation, CSE must prove a state of mind of an agent or agents of Qantel. What, more precisely, is the required state of mind? "Willful" or "knowing" in relation to what?

I conclude that this question is more easily answered on the facts of the present case than in general. The principal reason this is so is that a claim of fraud presents a context in which what is required to be known to satisfy the test of "knowing violation" is a fact existing at the time of the defendant's actions. The idea of knowing an existing fact is more easily grasped and understood than the idea of knowing that some described consequence will or will not occur in the future. It is true that we often say that persons act knowingly in relation to future consequences when they act believing for certain that those consequences will follow. "They knew what they were doing," in ordinary usage, means they knew future consequences and not merely existing facts. We speak in this way not only in ordinary discourse but also in law. *See, e.g., ALI Model Penal Code* § 202(b) (1962) (one "acts knowingly" with respect to a result if "he is aware that it is practically certain that his conduct will cause such a result"). *Cf. Restatement (Second) of Torts* § 8A (1965) (defining intent to cause a consequence of an act as the state of mind of desiring to bring about that consequence or believing that the consequence is substantially certain to result from the act). Nevertheless, existing facts can be known with a degree of certainty closely approaching the absolute—even if human fallibility tells us it falls short. In contrast, human capability of knowing future consequences of an act is more limited. Thus, the idea of "knowing" future consequences is more complex, and a legal standard built upon it is more difficult to formulate and apply, than the idea of "knowing" existing facts and the standard built upon that idea. Far more complex, still, is the state of mind of willfulness in relation to future consequences.

I conclude, however, that in the present case I need not predict how these complex and difficult questions of interpretation of section 11 of ch. 93A will be resolved in Massachusetts law. It is enough for dispo-

sition of the present case to reach a more modest conclusion, as I do. To prove that the defendant committed a knowing violation by fraud, the plaintiff may show that agents of the defendant knew that the fact they represented to be true was not true. Similarly, to prove that the defendant committed a willful violation by fraud, the plaintiff may prove that agents of the defendant knew that they did not know whether the fact represented was true or false—that they made the representation without knowing whether it was true or false and with reckless disregard for whether it was true or false. Though not the equivalent of proving the state of mind of knowing the falsity of the fact represented, this is nevertheless proof of a culpable state of mind—the state of mind of willful disregard for truth or falsity of the fact represented. For reasons explained in Part VI, *infra,* I find that in this case CSE proved "willful or knowing violation" in this sense.

■ I conclude that "willful or knowing violation" in this sense is a violation of ch. 93A section 2. This conclusion is supported by the rationale of opinions of the Supreme Judicial Court of Massachusetts that address the meaning of "willful or knowing" violation as that phrase is used in ch. 93A, § 11. In *International Fidelity, supra,* taking account of its earlier decisions, the court observed, *id.* 387 Mass. at 853, 443 N.E.2d at 1316:

> Chapter 93A ties liability for multiple damages to the degree of the defendant's culpability by creating two classes of defendants. The first class is those defendants who have committed relatively innocent violations of the statute's substantive provisions. These defendants are not liable for multiple damages. *Linthicum v. Archambault,* 379 Mass. 381, 388 [398 N.E.2d 482] (1979). The second class is those defendants who have committed "willful or knowing" violations. § 11 *supra.* Based on the egregiousness of each defendant's conduct, the trial judge may assess between double and treble damages . . . .

The issue there before the court was whether a plaintiff suing two or more defendants for multiple damages under ch. 93A, § 11 is limited to a single award of multiple damages for which defendants would be jointly and severally liable, or might instead recover separate awards, in different amounts, against different defendants. The court rejected an argued analogy to the treble damages provisions of the Clayton Antitrust Act, 15 U.S.C. § 15, under which "the trial judge has no discretion to deny the plaintiff treble damages once a violation—even a merely negligent one—is proved" and liability is joint and several. *Id.* at 854, 443 N.E.2d at 1316. In contrast, "[t]he Massachusetts Legislature consciously enacted a rule whereby the defendant's liability is measured by the degree of his culpability." *Id.* The court added, *id.* at 857, 443 N.E.2d at 1318:

> Our interpretation of § 11 is consistent with the canon of statutory construction that we should interpret a statute in a manner that advances the objective of the statute. *Hayon v. Coca Cola Bottling Co. of New England,* 375 Mass. 644, 648 [378 N.E.2d 442] (1978). Like other statutes containing multiple damage provisions, §§ 9 and 11 reflect "the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct and encourage vindicative lawsuits." *McGrath v. Mishara,* 386 Mass. 74, 85 [434 N.E.2d 1215] (1982). These sections also seek to promote reasonable settlements. *Nader v. Citron,* 372 Mass. 96, 100 [360 N.E.2d 870] (1977). These goals will be served by our construction of the statute.

Although the precise issue before the court in that case differs from the issue presented here, the court's rationale strongly supports three conclusions that are relevant to the issue here. First, trial courts, in making the discretionary determination of the scope of multiple damages against a defendant, within the limits of not less than double nor more than treble compensatory damages, are directed to consider the degree of culpability of the defendant. Second, merely negligent (or even grossly negligent conduct, it would seem) is not culpable in the

sense relevant to this determination. Third, for this purpose, just two classes of conduct are recognized—"relatively innocent violations of the statute's substantive provisions" and "willful or knowing" violations.

The inference is compelling that fraud—a false representation made either knowingly or in reckless disregard for truth or falsity—comes within the class of "willful or knowing" rather than the class of "relatively innocent" violations of ch. 93A, § 2.

It might be argued that the conclusion I have reached is inconsistent with *Homsi v. C.H. Babb Co.,* 10 Mass.App.Ct. 474, 1683, 1686, 409 N.E.2d 219, 223, 225 (1980) (noting that trial judge found no willful violation of § 2 despite determination that defendants " 'recklessly made a promise, knowing that the promise could not be kept, and that the plaintiffs would rely on this promise' "). The issue presented here, however, apparently was not argued or considered in that case, either in the trial court or on appeal. Moreover, that court did not have the benefit of the very substantial guidance on this issue that is provided by the more recent decision of the Supreme Judicial Court in *International Fidelity, supra.* For these reasons I conclude that I should be guided here by the rationale of the more recent opinion of the Supreme Judicial Court.

The conclusions of law thus far stated here regarding Massachusetts law may be challenged. Either on appeal or in answer to questions regarding Massachusetts law that might later be certified to the Supreme Judicial Court by this court or by the First Circuit, it may be held that I have erroneously interpreted or predicted Massachusetts law. To avoid needless delay in final disposition should that occur, I proceed to consider other possible interpretations of the phrase "willful or knowing violation of said section two" of ch. 93A.

It may be argued that defendant's knowing the falsity of a material misrepresentation of fact on which plaintiff relied falls short of "willful or knowing violation of said section two" of ch. 93A. For example, it may be argued that the statute itself says

the defendant must know that the act is a "violation of section two" of this particular statute. Thus, the argument goes, we should read Section 11 as requiring that CSE prove that Qantel acted knowing that Massachusetts had adopted M.G.L. ch. 93A and that Qantel's conduct was in violation of section 2 of that act (or, as to reckless disregard, that, for example, Qantel knew that ch. 93A had been adopted, was aware of a high probability that its conduct was in violation of the statute, and proceeded with reckless disregard for whether it was or not). Applying this restrictive interpretation to the evidence in this case, I would find that CSE failed to prove a willful or knowing violation. I conclude, however, that Massachusetts precedents do not support such a restrictive interpretation of section 11. No decided case states such an interpretation explicitly, and the results reached in cases cited previously in this opinion, examined in relation to the reported evidence, seem plainly inconsistent with it. Also, even though literal reading of section 11 might be thought to support it, this interpretation would leave so little scope of application of the provision for multiple damages that it could not be squared with declared and apparent objectives of the legislature in enacting it, as they were explained in *International Fidelity, supra.*

A second, marginally less restrictive interpretation would assign to "willful" a definition like that applied to this term in criminal statutes—for example, a willful violation is one that was voluntary and intentional, and done with bad purpose either to disobey or to disregard the law. Even though moving away from a literal interpretation requiring knowledge of the statute (or reckless disregard as to the existence of the statute), this interpretation would require knowledge of (or reckless disregard as to) the fact that the action was in violation of some unspecified law. Again, applying this marginally less restrictive interpretation to the evidence in this case, I would find that CSE failed to prove a willful or knowing violation. I conclude,

however, and for essentially the same reasons just stated in relation to the most restrictive interpretation examined above, that Massachusetts courts have not and will not adopt this interpretation. Borrowing this definition of "willful" from criminal law is basically at odds with the emphasis in Massachusetts cases on the remedial functions of ch. 93A. *See, e.g., International Fidelity, supra,* 387 Mass. at 853–57, 443 N.E.2d 1315–18.

To decide the present case, I need not predict the precise formulation of any less restrictive interpretation of "willful or knowing violation" that the Massachusetts courts may adopt in deciding cases of claimed unfair or deceptive acts or practices other than fraud. I need not determine, for example, whether a plaintiff may satisfy the burden of proof under section 11 by showing no more than that the defendant knew its act or practice was deceptive or unfair or acted with reckless disregard for whether or not it was deceptive or unfair. *See Heller, supra* 376 Mass. at 627, 382 N.E.2d at 1070.

### VI.

■ Has CSE, in the present case, proved a "willful or knowing violation" in the sense of intentional misrepresentation, or in the sense of false representation of material existing fact with reckless disregard for truth or falsity? That is, did Qantel's agents knowingly make a false representation, or make a false representation without knowing whether it was true or false and with reckless disregard for whether it was true or false?

Under instructions consistent with the requirements for proof of "willful or knowing violation" in this sense,[1] the jury so found. On the evidence, I would so find independently of the verdict. Also, for the reasons stated in Part IV, *supra,* I adopt the jury finding.

I conclude that CSE is entitled to multiple damages in accordance with ch. 93A, § 11.

### VII.

■ The jury's determination of compensatory damages in this case (for breach of contract and fraud) was based on precisely the same evidence as is before the court on the ch. 93A claim, and I conclude that under Massachusetts law, the measures of damages applying to the fraud claim and the ch. 93A claim, on the evidence in this case, are the same. The damages question does, however, present more difficult issues, of both fact and law, than those considered in relation to the findings of fraud and willful or knowing violation. *See* Parts IV and VI, *supra.* Those findings were on yes-or-no issues on which independent fact finders more often than not would arrive at precisely the same findings, as was the case here. In contrast, independent fact finders are much less likely to arrive at precisely the same figure on an issue of unliquidated damages.

In this case, expert opinion evidence of the plaintiff supported, as one of a limited number of precisely stated figures, the exact damages figure found by the jury. Nevertheless, at least two other precise figures were stated, above and below the figure found. Moreover, a defense expert offered an opinion that no precise figure could be calculated and that any calculation was speculative.

I reject the defense contention that on the evidence in this case the proof of damages was so speculative that no award is allowable. The law does not require abso-

---

1. The following instructions were given to the jury on the fraud issue:

   The term "fraud" is generally defined in the law as an intentional or reckless misrepresentation of material existing fact made by one party to another to induce the other party to act, and upon which the other party justifiably relies with resulting injury or damage.

   To make a misrepresentation "intentionally" is to do it knowingly and voluntarily, and not because of accident or mistake.

   To make a misrepresentation recklessly, as used in these instructions and in the verdict form before you, means to make it without knowing whether it is true or false and with reckless disregard for whether it is true or false.

lute certainty in calculating damages. Rather, a fact finder may arrive at any figure within a reasonable range supported by evidence and inferences drawn from the evidence. *See, e.g., National Merchandising Corp. v. Leyden,* 370 Mass. 425, 348 N.E.2d 771 (1976); *McKenna v. Begin,* 5 Mass.App. 304, 362 N.E.2d 548 (1964).

▇ The record in this case supports the view that the jury performed its task as fact finder impartially and conscientiously. The jury finding on damages is supported by the evidence.

In these circumstances, should I adopt the jury's determination of damages, or should I instead proceed to a separate determination, either entirely independently of the jury finding or upon consideration of the evidence and with the benefit of the jury finding as an advisory finding?

I conclude that even if, as a fact finder proceeding entirely independently of the jury finding, I might have arrived at a different figure, this is not a sufficient reason to engage in the rather problematic exercise of putting the jury's finding out of my mind and arriving at the finding I would have made if I had never known of the jury finding. Rather, as long as the jury finding is reasonable—and I so regard it here—I conclude that it is appropriate for me to adopt it as my finding as well.

Treating the jury's finding as advisory or provisional, then, and taking account of all the evidence, I adopt the jury finding on compensatory damages for fraud as the measure of compensatory damages under the ch. 93A claim. I need not consider whether the same result may be required on grounds analogous to issue preclusion, or on some other ground, in order to foreclose the unseemly spectacle of entering judgment on different counts in the same case for amounts that differ only because two independent fact finders have arrived at different results, on evidence that supports either result.

I conclude that CSE has proved compensatory damages of $2,336,742.

## VIII.

▇ Section 11 of ch. 93A mandates that a court, in the circumstances of this case, award not less than double and not more than treble the compensatory damages.

Guided by the rationale of *International Fidelity, supra,* I must determine the degree of the culpability of Qantel. In Parts IV and VI, *supra,* I have found fraud, and in Part V, *supra,* I have determined that this finding established culpability sufficient to pass the threshold of "willful or knowing" violation of ch. 93A. I find, however, that the fraud in this case is not of such an egregious quality as to warrant more than double damages.

Double damages appear appropriate in this case for additional reasons as well. The multiple damages provision of § 11, like its parallel in § 9, is intended to deter businesses from knowingly engaging in deceptive trade practices by increasing the magnitude of potential liability, and providing an incentive to victims of such practices to avail themselves of these legal remedies. Although the goals of the multiple damages provisions of these two sections are similar, the context of the remedies differs. Section 9 allows consumer victims to recover multiple damages; § 11 allows commercial victims to do so. Unlike the relatively small harm in many consumer transactions, actual damages in this case are significant. Double recovery in a commercial setting such as this is sufficient to serve both the deterrent and incentive purposes of the Act, especially when coupled with an award of attorney fees.

I conclude that an award of double damages is appropriate here.

## IX.

Section 11 of ch. 93A provides also for an award of attorney fees. Massachusetts precedents as to ch. 93A claims permit the trial judge before whom the case was tried to make this award, without receiving further evidence, on the basis of familiarity with the case and the work performed by

counsel as disclosed through the trial and other proceedings before the court. *See, e.g., Linthicum, supra* 379 Mass. at 388, 398 N.E.2d at 488 (amount of reasonable attorney's fee is "largely discretionary"); *Heller, supra* 376 Mass. at 630–31, 382 N.E.2d at 1072 (judge may rely on "firsthand knowledge of the services performed before him"); *Homsi, supra.* I will nevertheless invite counsel to confer on this issue and advise the clerk within 10 days whether a stipulation on this issue can be reached and, if not, whether they wish to present submissions to the court orally or in writing. Entry of judgment will be deferred pending resolution of this issue.