USCA1 Opinion

 

 March 31, 1993 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT __________ __________ No. 92-1690 NORTHEAST DATA SYSTEMS, INC. Plaintiff, Appellant, v. McDONNELL DOUGLAS COMPUTER SYSTEMS COMPANY, Defendant, Appellee. __________ ERRATA SHEET Please make the following correction in the opinion in the above case released on March 2, 1993: Page 5, line 10: After the word "claims" at the end of the sentence, add the following language: See Caton v. Leach Corp., 896 F.2d 939, 943 (5th Cir. ___ _____ ____________ 1990) (breach of implied covenant claims are breach of contract claims); Restatement (Second) of Contracts ___________________________________ 176 comment e (1981). March 2, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1690 NORTHEAST DATA SYSTEMS, INC., Plaintiff, Appellant, v. McDONNELL DOUGLAS COMPUTER SYSTEMS COMPANY, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert B. Collings, U.S. Magistrate Judge] _____________________ ____________________ Before Breyer, Chief Judge, ___________ Cyr and Boudin, Circuit Judges. ______________ ____________________ Roger S. Davis with whom Nancy Pitnof-Mahoney and Davis, Rubin & ______________ _____________________ _______________ Parker, P.A., were on brief for appellant. ____________ Frederick W. Rose with whom Gianfranco A. Pietrafesa, and Young, _________________ ________________________ ______ Rose, Imbriaco & Burke, P.C. were on brief for appellee. ____________________________ ____________________ March 2, 1993 ____________________ -2- 2 BREYER, Chief Judge. In February 1976, Northeast ___________ Data, a Massachusetts firm, entered into a contract with Microdata, a California company. In the contract, Microdata promised Northeast, among other things, that: 1) Northeast would become the "sole distributor" for Microdata's "Reality" line of computer parts and related software in seven Massachusetts counties; 2) Microdata would properly service "Reality" products after Northeast Data sold them to end users; 3) Microdata would supply proper spare parts; and 4) Microdata would pay Northeast a 10% commission on any "Reality" products that Microdata sold directly to end users in Northeast's territory. The parties' relationship subsequently deteriorated. And, in January 1983, Microdata, claiming that Northeast had failed to meet its contractual purchasing quota, terminated the distributorship. Northeast then brought this diversity action (filed in state court then removed to federal court) against Microdata. In its original complaint Northeast essentially said that Microdata had broken its agreement (1) by failing to supply enough, or adequately trained, servicing personnel; (2) by failing to supply enough, or adequate, supply parts; (3) by failing to pay many 10% commissions when due; (4) by marketing what were essentially "Reality" products under different names, through other dealers; and (5) by charging Northeast higher prices than it charged other dealers. Northeast later amended its complaint to add a "deceit" claim that Microdata had failed to disclose material information during contract negotiations, namely that Microdata was selling Reality products, and would continue to sell them, to a company called ADP, which (according to Northeast) was both a "Reality" end user and a competing dealer. In Northeast's view these actions and omissions broke both explicit and implicit terms of the contract, amounted to "fraud," and violated various statutes, which, with the exception of Massachusetts' "unfair trade practices" statute, are not relevant here. See Mass. Gen. L. ch. 93A. ___ The parties tried the contract and fraud issues to a jury, with the magistrate reserving the claim of violation of Chapter 93A. The jury found that Microdata had wrongfully terminated the distributorship; that it had broken explicit terms in the contract by failing to pay commissions on "end user" sales to ADP; and that it had broken an implicit covenant of "good faith and fair dealing" (either by failing to pay commissions on other sales, by -4- 4 failing to supply proper parts or service, or both). It awarded Northeast approximately $1.7 million damages. The jury also found that Microdata had fraudulently induced Northeast to enter the contract by failing to tell Northeast about its ADP sales; but the jury refused to award any damages on that claim. The magistrate then turned to the reserved Chapter 93A claim. He noted that Northeast and Microdata had agreed, while the case was pending, to try the contract and "fraud" claims under California law. He reasoned that the 93A claims so closely resembled the contract and fraud claims that the parties must have agreed "implicitly" to try those claims under California law as well. He concluded that, since California has no 93A-type of law, he must dismiss Northeast's 93A claims. Northeast now appeals that dismissal. See 28 U.S.C. 1291, 636(c)(3) (appeal from ___ order of a magistrate judge). For purposes of this appeal, we have assumed (without deciding) that Northeast is correct when it says that it neither explicitly nor implicitly agreed, during the course of this litigation, that California law would govern its 93A claims. Nonetheless, Northeast did agree, in the contract itself, that -5- 5 This Agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of California. In our view, Northeast's Chapter 93A claims (with one exception) fall within this contractual choice-of-law provision. Northeast describes its Chapter 93A claims and, most importantly, the alleged facts that underlie them in an 82 page document, filed with the magistrate, called "Plaintiff's Request for Findings of Fact and Rulings of Law on Chapter 93A Damages." Our review of the facts alleged in that document makes clear that (as we said, with one exception) Northeast's 93A claims amount to embroidered "breach of contract" claims. See Caton v. Leach., 896 F.2d ___ _____ ______ 939, 943 (5th Cir. 1990) (breach of implied covenant claims are breach of contract claims); Restatement (Second) of ________________________ Contracts 176 comment e (1981). In four instances _________ Northeast simply says that Microdata "knowingly" or "willfully" broke the contract by (1) failing "to provide" proper "field service and support;" (2) failing to deliver goods when and as promised; (3) selling goods outside the "sole distributorship" without paying commissions; and (4) wrongfully terminating the contract. In three other instances Northeast says that Microdata threatened to take -6- 6 actions that the contract forbids, with a bad motive, namely to force Northeast to give up certain contract rights, such as its exclusive Reality distributorship. Those badly motivated threats (as far as the document reveals) threaten actions that Microdata might legally have taken had there been no contract, for they consist of claims that Microdata threatened (1) to deny Northeast the right to sell certain "Reality" products (such as a product called "Sequel"); (2) to sell a competing product (called "CMC") in Northeast's exclusive territory; and (3) (in unspecified ways) to stop Northeast from meeting its contract-imposed buying quota. Of course, the allegations that Microdata acted "willfully" or "knowingly" or with a bad motive add something to the pure breach of contract claims. Indeed, Northeast hopes they provide the element of "rascality" needed to bring a claim of breach of contract within the statute. Compare Pepsi-Cola Metropolitan Bottling Co., Inc. _______ ___________________________________________ v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985) (simple ______________ breach of contract does not violate Chapter 93A) with Wang ____ ____ Laboratories, Inc. v. Business Incentives Inc., 501 N.E.2d __________________ _________________________ 1163 (Mass. 1986) (bad faith contract termination states a Chapter 93A claim) and Levings v. Forbes & Wallace, Inc., ___ _______ _______________________ -7- 7 396 N.E.2d 149 (Mass. 1979) (93A violations must involve "rascality"). But, the relevant question here is whether those additional "state of mind" or "bad motive" allegations (together with other, less significant bits of embroidery) take these claims outside the scope of contractual language that says California law will govern "the rights and obligations of the parties" in respect to the "Agreement." We find that they do not. The contract violations are essential elements of the 93A claims. The "state of mind" and "bad motive" allegations add little. Given the language of the contract's choice-of-law provision (applying California law to "rights and obligations" arising out of, or imposed by, the "Agreement"), would it not seem surprising to find that Massachusetts law, not California law, governed these claims? In the absence of any contrary evidence, we believe that, when parties agree that "contract related" claims will be tried under, say, the law of California, they do not mean that a claim of "serious" or "rascal-like" breach of contract will be tried under the law of Massachusetts. Moreover, the Massachusetts Supreme Judicial Court has recognized that, under some circumstances, a Chapter 93A claim "is essentially duplicative of a traditional contract -8- 8 claim." See Canal Electric Co. v. Westinghouse Electric ___ ___________________ _____________________ Corp., 548 N.E.2d 182, 187 (Mass. 1990). That court has _____ permitted plaintiffs to obtain separate Chapter 93A attorneys' fees in such circumstances, but it has denied plaintiffs "double recovery" on both a breach of contract claim and a 93A claim arising from the same breach. See ___ Linthicum v. Archambault, 389 N.E.2d 482 (Mass. 1979). _________ ___________ These Massachusetts decisions support our natural reading of the scope of the contract's choice-of-law provision, for they acknowledge that, depending on the facts, a Chapter 93A claim may essentially reduce to a contract claim. One federal district court has reached the same conclusion we reach with respect to a similar contract clause. See Scheck ___ ______ v. Burger King Corp., 756 F.Supp. 543, 545-46 (S.D. Fla. __________________ 1991) (clause which says franchise agreement "shall be governed and construed under and in accordance with the laws of the State of Florida" applies to bar Massachusetts 93A claims which incorporate contract claims and would not exist without the agreement). We have found one district court case in Illinois that reaches a different result. Fleet Mgt. Servs., Inc. v. _______________________ Archer-Daniels-Midland Co., Inc., 627 F.Supp. 550 (C.D. Ill. ________________________________ 1986). That district court reasoned that any violation of ___ -9- 9 Chapter 93A is a "tort" and therefore no alleged Chapter 93A violation could fall within the scope of a contractual choice-of-law provision that talks about "contracts." Id. __ at 561-62. This reasoning, however, seems to exalt pleading form over fact-related substance. Such reasoning would undermine the parties' choice of law agreement by permitting one of them, through artful pleading, to bring what is little more than a breach of contract claim, under law that both parties have agreed would not apply. The Illinois case relied upon a Massachusetts district court case, Computer Systems Engineering, Inc. v. ___________________________________ Qantel Corp., 571 F.Supp. 1365 (D.Mass. 1983), a case very ____________ different from the present one. Qantel concerned a 93A ______ claim that was not, in essence, a breach of contract claim, ___ for the plaintiff there did not claim that the defendant broke a contract, but rather that the defendant fraudulently _____ induced the plaintiff to form the contract in the first _______ ____ place. See id. at 1367 (Chapter 93A claim partially based ___ __ on fraudulent inducement); see also id. at 1370 (because ___ ____ ___ tort-like claims predominate over contract-like claims in compound 93A claim, 93A claim is outside parties' agreement); cf. Popkin v. National Benefit Life Insurance ___ ______ ________________________________ Co., 711 F.Supp. 1194, 1201-02 (S.D.N.Y. 1989) (Chapter 93A ___ -10- 10 tort claim alleging fraudulent misrepresentations to third party with whom plaintiff had a different contract falls outside choice-of-law clause in agency agreement between plaintiff and defendant). Insofar as Qantel contains dicta, ______ Qantel, 571 F.Supp. at 1371, that might be read to mean that ______ _____ every Chapter 93A claim must be viewed as a tort claim, no _____ matter how clearly it resembles a claim of breach of ___ contract, those dicta do not express our view of Massachusetts law. We conclude that the parties, in their choice-of- law provision, meant that California law would govern both ordinary and "rascal-like" breach of contract claims. We believe that the "rascal-like" claims before us fit within that provision. In the absence of a conflict with public policy, Massachusetts honors choice-of-law provisions in contracts, Morris v. Watsco, Inc., 433 N.E.2d 886, 888 ______ _____________ (Mass. 1982), and, in this diversity case, so must we. Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st ______ _________________________ Cir. 1991). There is no conflict with Massachusetts public policy here. The "dispute is essentially a private one," which, unlike, say, an antitrust dispute, has no third-party effects. Cf. Canal Electric, 548 N.E.2d at 187-88 ___ _______________ -11- 11 (corporations may waive protection of 93A by contractual limitation of liability clause). We turn now to the one further 93A claim that we called an "exception." That special claim rests upon allegations of fraud, not breach of contract. Northeast says that Microdata, when negotiating the contract, failed to disclose that it was currently selling Reality systems to ADP, a firm that does business in Northeast's distributorship area, and that it intended to continue selling to ADP even after the contract was in effect. Northeast says that this course of conduct amounts to a "fraud" that falls within the scope of Chapter 93A. Because this claim concerns the validity of the formation of _________ the contract, it cannot be categorized as one involving the rights or obligations arising under the contract. Hence, the claim falls outside the contract's choice-of-law provision. See Qantel, 571 F.Supp. at 1372. Nonetheless, ___ ______ Microdata, in its brief, refers us to the docket sheet, which notes that Northeast agreed, in a settlement, to stipulate that "none of" Microdata's "actions w[ith] r[eference] t[o] ADP can form the basis of liability." A district court memorandum confirms that, as part of the consent judgment, Northeast "agreed that if the Court of -12- 12 Appeals should reverse the judgment dismissing plaintiff's Chapter 93A claim (Count X of the Second Amended Complaint), plaintiff will not press as part of that claim any of the defendant's actions with respect to ADP." The appeal, with respect to this remaining ADP claim, therefore is moot. See ___ Pontarelli v. Stone, 978 F.2d 773, 775 (1st Cir. 1992) __________ _____ (settlement of merits of underlying claims moots appeal). Finally, we note that Northeast, in its 82 page document, at one point alleges in a single sentence that Microdata violated Chapter 93A by "filing and prosecuting frivolous and meritless counterclaims and affirmative defenses, without any attempt to introduce any evidence to support same at the trial of this action." Because Northeast does not separately press this claim on appeal, we suspect that it has been abandoned. But, if it has not, we simply point out that a claim of "abuse of process" with nothing more does not state a violation of Chapter 93A. See ___ Quaker State Oil Refining v. Garrity Oil Co., 884 F.2d 1510, _________________________ _______________ 1514 (1st Cir. 1989) and cases cited therein (filing legal _______________________ claim which proves baseless not in itself an unfair trade practice, except where claim brought with ulterior motive). For these reasons, the magistrate's order dismissing the Chapter 93A claims is -13- 13 Affirmed. ________ -14- 14