TANIOS A. HOMSI & others[1] *vs.* C. H. BABB CO., INC.

Suffolk.    March 20, 1980. — August 29, 1980.

Present: GREANEY, PERRETTA, & DREBEN, JJ.

*Contract*, Performance and breach, Damages. *Consumer Protection Act*, Unfair act or practice, Attorney's fees. *Damages*, Consumer protection case.

A judge did not abuse his discretion in refusing to suspend a civil trial in order to allow a rebuttal witness to testify where the request was not made until the conclusion of all the evidence and where it appeared that the evidence would be merely cumulative. [475-476]

A defendant in a civil action was not entitled as of right to raise a claim that an award of damages was excessive, on a motion for a new trial where the claim was not raised at trial. [476]

In an action under G. L. c. 93A, § 11, there was sufficient evidence to support findings that, at the time the seller of an oven for the baking of Arabic bread promised, by an amendment to the sales contract, to procure the necessary gas to run the oven, the seller knew natural gas was not available in an adequate amount, and that this promise therefore constituted an unfair or deceptive act within the meaning of c. 93A, § 2 [476-480]; and, even though the buyers had paid the full amount of the down payment on the oven prior to the amendment to the contract, evidence that the buyers had incurred travel expenses in reliance on the contract and had lost interest income on their funds was sufficient to show a loss of money causally related to the deception [480-481].

A judge did not abuse his discretion in his award of attorney's fees pursuant to G. L. c. 93A, § 11. [481-482]

CIVIL ACTION commenced in the Superior Court on May 6, 1975.

Upon retransfer to the Superior Court, the case was tried before *Meyer*, J., a District Court judge sitting under statutory authority.

---

[1] George A. Homsi and Saleem S. Mouawad.

*Avram G. Hammer* (*John W. Costello* with him) for the defendant.

*Nicholas A. Abraham* for the plaintiffs.

DREBEN, J. The plaintiffs agreed to buy an oven for the baking of Arabic bread under a contract which, as amended, provided that an adequate supply of gas would be furnished by the defendant. At the time for delivery of the oven, natural gas was not available, and the plaintiffs asked for a return of the $10,600 they had paid as a down payment on the oven. The defendant refused to return the deposit, and the plaintiffs brought this action for damages, alleging breach of contract, fraud, and unfair and deceptive acts under G. L. c. 93A. The defendant counterclaimed. The plaintiffs' common law claims were tried to a jury, which awarded the plaintiffs $15,000 and found for the plaintiffs on the defendant's counterclaim. A judge sitting in the Superior Court by statutory authority found that the defendant had violated c. 93A, § 11, and awarded the plaintiffs counsel fees. The defendant appeals from the judgments entered on the jury verdict and on the findings of the judge, from the denial of its motion for a new trial, and from an order of the judge which amended his findings with respect to the date on which certain events had occurred. We affirm.

We shall first dispose of the defendant's contentions which relate to the plaintiffs' common law claims tried to the jury. The defendant alleges error in the judge's refusal to suspend the trial in order to allow a rebuttal witness to testify. The witness, whose absence was due to a flight delay, presumably would have testified that the oven which was originally intended for the plaintiffs was sold at a loss as a pizza oven. The judge refused the request which was made for the first time on a Monday morning after the conclusion of all the evidence. There was no error. Whether the defendant had been sufficiently diligent or whether for any reason "justice required a postponement" are ordinarily questions for "the presiding judge alone" and will not be disturbed in the absence of a showing of an abuse of discretion or arbitrariness.

*Noble* v. *Mead-Morrison Mfg. Co.*, 237 Mass. 5, 16 (1921). *Morgan* v. *Steele*, 242 Mass. 217, 218 (1922). There was no such showing here. Moreover, evidence of the defendant's loss on the oven had been presented previously, and the judge could well have determined the evidence to be merely cumulative. Cf. *Bendett* v. *Bendett*, 315 Mass. 59, 65-66 (1943).

The defendant also argues that there was insufficient evidence for the jury to award the plaintiffs damages in excess of the amount of the deposit of $10,600. This claim, however, should have been made at the time of the charge to the jury. The defendant did not object to the judge's instructions (which permitted damages in excess of the deposit) and made no suggestions after the charge was given although invited to do so by the judge. It is only by way of appeal from the denial of its motion for a new trial that the defendant argues the issue of excessive damages. The defendant was not entitled as of right to bring before the trial judge on his motion for a new trial this question which it neglected to raise at trial. *Devore* v. *Good*, 321 Mass. 84, 85 (1974). *Chaplain* v. *Dugas*, 323 Mass. 91, 95 (1948). "[A]n award of damages must stand unless . . . to permit it to stand was an abuse of discretion on the part of the court below, amounting to an error of law." *Bartley* v. *Phillips*, 317 Mass. 35, 43, 41-44 (1944). See also *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 663-665 (1980). There was no such abuse here. In any event, there was evidence before the jury that the plaintiffs spent about two months looking for business locations in reliance on the contract, that they went to Brockton by automobile, thus incurring travel expenses, and that they placed a $1,000 deposit on a location.[2] There was also evidence of the hourly earnings of at least one of the plaintiffs.

We turn next to the defendant's contentions which relate to the plaintiffs' statutory claim heard by the judge under

---

[2] Although the deposit was returned, there was necessarily some loss of interest on the funds deposited.

G. L. c. 93A, § 11.[3]  The defendant claims that it committed no "unfair or deceptive acts or practices" in dealing with the plaintiffs under G. L. c. 93A, § 2(a), as appearing in St. 1967, c. 813, § 1.  We relate the relevant facts as found by the judge and as supplemented by us from the record. *Western Mass. Elec. Co. v. Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 817 (1979), and cases cited.

The defendant manufactured and sold "Arabic Tunnel Ovens", which are ovens specially designed to bake Arabic or Syrian bread.  These ovens require sufficient gas to produce 1,000,000 B.T.U.'s per hour and, in most locations, the installation of a larger gas line.  In the summer of 1974, officers of the defendant took the plaintiffs to places in Massachusetts where the defendant's ovens were in use.  All those ovens used natural gas as a source of heat.

The plaintiffs decided to go into the Syrian bread baking business and, in August, 1974, signed a contract for the purchase of an oven from the defendant.  They gave a $600 deposit, and some time in October, deposited an additional $10,000.  At about the time of the additional deposit, the plaintiffs became concerned that they would be obliged to purchase an oven for which they would be unable to obtain gas.  As a result of this concern, an amendment to the contract was executed under which "the seller agreed to procure the necessary gas to run the Arabic Bread oven purchased by Mr. Homsi and partners."

At the time the amendment was signed, there was an acute oil and gas shortage.  The judge found that the defendant at that time knew that natural gas was not available in an adequate amount in the Brockton area, where the plaintiffs wanted to locate.  The defendant argues that there was no evidence to support this finding, but we disagree.  The defendant knew the quantity of gas needed for the oven and that a larger gas line would probably be needed.  It was in a business highly dependent on adequate fuel

---

[3] The 1978 and 1979 amendments of § 11 did not make any changes in § 11, as enacted by St. 1972, c. 614, § 2, which are relevant to this action.

supplies and could be expected to follow closely the available sources of supply. There was evidence that the Brockton Gas Company took on no new gas customers after May, 1974, and there was evidence from two fuel dealers that there were problems in obtaining natural gas. The defendant also knew that the plaintiffs were looking in Brockton, a city with large Lebanese and Greek populations which did not have a bakery making Arabic bread. Moreover, the gas shortage was not limited to Brockton, and there was evidence that another customer of the defendant was irate because, despite the defendant's promise, the customer was unable to obtain gas. We conclude that the judge's finding that the defendant knew natural gas was not available in an adequate amount was not clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

The defendant introduced evidence that at the time it offered delivery of the oven, an event which occurred approximately one month after the contract amendment had been signed, propane gas was available for the operation of the oven. The judge, on conflicting evidence, determined that the defendant's arguments about the suitability of the propane gas were "specious and unpersuasive", and that propane gas cost twenty-five percent more than natural gas. He also found that the defendant knew that "necessary gas" would be interpreted by the plaintiffs to mean natural gas, and that this interpretation was reasonable. The judge's finding that the contract amendment referred to "natural gas" is supported by the evidence and is not clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

On these facts, the judge ruled that the defendant's officers commited an unfair or deceptive act within the meaning of G. L. c. 93A, § 2, when "they recklessly made a promise, knowing that the promise could not be kept and that the plaintiffs would rely on this promise." We agree.

While there is as yet not a "clear definition of conduct which may constitute a violation of c. 93A", there are definitions which "offer some guidance." *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 776-777 (1980). One of

the "sources" of "guidance" (*Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 624-625 [1978]) is the rules and regulations of the Attorney General which, unless invalid, have the force of law. *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. at 775. The relevant regulation, 940 Code Mass. Regs. § 3.16(2) (1978), provides that a failure to disclose to a buyer or prospective buyer "any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction" is a violation of c. 93A § 2. The cases in the Supreme Judicial Court and in this court are in accord. *York* v. *Sullivan*, 369 Mass. 157, 162 (1975). *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. at 626-627 & n.3. *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 702-703 (1975). *Mongeau* v. *Boutelle, ante* 246, 248-249 (1980). Cf. *Comonwealth* v. *DeCotis*, 366 Mass. 234, 241 n.6 (1974). See also 940 Code Mass. Regs. § 3.05(1).[4]

There is no question that, by its deceptive promise, the defendant not only "could . . . have caused" but did cause the plaintiffs "to act differently from the way [they] otherwise would have acted", and, hence, the promise fell within the proscription of c. 93A, § 2. *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. at 777, quoting from *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 51 (1979).

The failure of the defendant to disclose that it meant propane gas when it used the term "necessary gas" was a failure to disclose a fact which may have influenced the buyers. In addition, the implicit assurances contained in the defend-

---

[4] Section 3.05(1) provides: "No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect. This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof."

ant's promise that it would supply the necessary gas may be justifiably interpreted, in light of the defendant's dependence on, and hence superior knowledge of, the sources of fuel supply, as a failure to disclose facts which it knew or should have known would "make the fulfillment of [its] . . . promise impossible or improbable." Restatement (Second) of Torts § 525, Comment f.

The defendant argues that even if it committed an unfair or deceptive practice, the plaintiffs have not shown any "loss of money or property" within the meaning of *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 44-45 (1975), which is causally connected to the seller's deception. *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 800-801 (1976). It argues that the last portion of the $10,600 deposit was paid on October 21, 1974, and that the contract amendment was not executed until October 22, 1974, as found by the judge in his original findings.[5] However, the time the deposits were made is only relevant to the question of the extent of the plaintiffs' reliance and does not answer the question whether the plaintiffs had any loss of money causally related to the defendant's deceptive act. As indicated earlier, the plaintiffs after October 22 did suffer some transportation expenses and lost interest income on their funds by relying on the defendant's deceptive promise and continuing to proceed under the contract. See *supra* at 476. Thus, there is here the "different question" discussed in *Baldassari* v. *Public Fin. Trust*, 369 Mass. at 45, under

---

[5] After the appeal was docketed, the plaintiffs, with leave of a single justice of this court, moved in the trial court under Mass.R.A.P. 8(e), 365 Mass. 851 (1974), to have the record corrected. The judge allowed the motion and amended his findings so that the date of the execution of the contract was October 21, 1974, rather than October 22, 1974. The defendant claims that this change is not permitted by the rules. It argues that Mass.R.A.P. 8(e) only permits corrections in the record, not corrections of findings, that the time for permitting changes in findings under Mass.R.Civ.P. 52(b), 365 Mass. 817 (1974), had expired and that the error in question was not a clerical error and hence cannot be corrected under Mass.R.Civ.P. 60(a), 365 Mass. 828 (1974). Since we deem irrelevant whether the contract amendment was executed on October 21 or October 22, we do not consider these claims.

which the plaintiffs have made out a cause of action under c. 93A. The plaintiffs have shown a loss of "money," and not merely time, causally related to the deception.

Although the judge found that the reasonable damages caused by the defendant's unfair and deceptive act were $15,000, he awarded no damages additional to those awarded the plaintiffs by the jury on the common law claims, as he did not find the defendant's acts to be wilful. Therefore, even if the judge's findings as to the extent of the damages on the c. 93A claim were erroneous, the defendant was not harmed by that error.

The defendant also contends that the award of attorney's fees pursuant to G. L. c. 93A, § 11, was excessive. The judge awarded attorney's fees and costs of $12,583.30. The fees, if calculated at an hourly rate, amount to approximately fifty dollars an hour. The plaintiff's counsel submitted an extensive memorandum indicating the time spent on each of the many matters involved in the preparation for this case which involved first a District Court trial and then a second trial lasting five days in the Superior Court.

Section 11 provides that if the court finds a violation of § 2, "the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs . . . ." Under c. 93A, where the award "is assessed against the party having no contractual relationship with the attorney involved, the standard of reasonableness depends not on what the attorney usually charges, but rather, on what his services were objectively worth". *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. at 629. Objective worth does not mean, as the defendant contends, that the amount recovered is the fundamental factor in determining the fee. This consideration would render nugatory the statutory directive which provides for a reasonable fee "irrespective of the amount in controversy." Thus, factors such as "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the

usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases" are all to be considered. *Linthicum* v. *Archambault,* 379 Mass. 381, 388-389 (1979). See *Hanner* v. *Classic Auto Body, Inc., ante* 121, 123-124 (1980). The amount of a reasonable attorney's fee is "largely discretionary," *Linthicum* v. *Archambault,* 379 Mass. at 388, and we rely on the judge's "firsthand knowledge of the services performed before him." *Heller* v. *Silverbranch Constr. Corp.,* 376 Mass. at 630-631. "Moreover, our reading of the record reveals no arbitrariness or injustice in the amount of the award." *Id.* at 631.

The defendant also argues that the fact that the plaintiffs had an arrangement with their counsel which provided for a contingent fee requires that the amount to be awarded not exceed the amount of the contingent fee provided for in the agreement. However, the letter agreement as to fees pointed out the newness of c. 93A, the dearth of case law as to fees, and the likelihood that the contingent fee would be less than the amount usually charged at the regular hourly rate. The letter then continued "if the court should award legal fees under 93A our compensation for your legal services will not be on the basis of contingent fee agreement." The judge, therefore, did not award a fee higher than that provided for by agreement.[6]

*Judgments affirmed.*

---

[6] We note that even where the agreement provides that the amount awarded is to be in addition to a contingent fee, at least one court has allowed such an award, subject, of course, to the concern that windfall fees be avoided. See *Farmington Dowel Prod. Co.* v. *Forster Mfg. Co.,* 421 F.2d 61, 90 (1st Cir. 1970). See also *Sargeant* v. *Sharp,* 579 F.2d 645, 649 (1st Cir. 1978).