**Jane RINI, Plaintiff,**

**v.**

**UNITED VAN LINES, INC., Defendant.**

**Civ. A. No. 92–30260–MAP.**

United States District Court,
D. Massachusetts.

Nov. 1, 1995.

John P. Pucci, Fierst & Neiman, North-ampton, MA, and Anne V. Romano, Law Offices of Anthony J. Siciliano, Springfield, MA, for Plaintiff.

Wesley S. Chused, Looney & Grossman, Boston, MA, for Defendant.

## MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND PRE-JUDGMENT INTEREST

### (Docket No. 112)

PONSOR, District Judge.

## I. *INTRODUCTION*

By separate memorandum issued today this court has ordered entry of judgment in favor of plaintiff for $50,000 in damages under the Carmack Amendment to the Interstate Commerce Act, based on the jury's verdict in plaintiff's favor, and triple damages in the amount of $300,000 for defendant's unfair and deceptive practices under Mass. Gen.L. ch. 93A, based upon the court's findings and conclusions. The latter award has subsumed a jury verdict awarding plaintiff $100,000 in damages for defendant's negligence and misrepresentation.

The purpose of this memorandum is to address plaintiff's petition for attorneys' fees and costs under both statutes and her claim for pre-judgment interest.

## II. *ATTORNEYS' FEES*

■ Although defendant contests the appropriateness of any award of damages under 93A, it must concede that, if the award was proper, reasonable attorneys' fees are owed to plaintiff. As to the Carmack claim, however, defendant argues that even if the award of damages was proper this case does not satisfy the criteria for an award of fees and costs. It is thus necessary to tackle the Carmack attorneys' fees issue at the threshold.

49 U.S.C. § 11711(d) establishes the conditions for an award of attorneys' fees to a shipper. It reads in part:

(d) In any court action to resolve a dispute between a shipper of household goods and a motor common carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title concerning the transportation of household goods by such carrier, the shipper shall be awarded reasonable attorneys' fees if—

(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later;

(2) the shipper prevails in such court action; and

(3)(A) no dispute settlement program approved under this section was available for use by the shipper to resolve the dispute[.]

§ 11711(d) must be read in conjunction with 49 U.S.C. § 11711(b)(2) which provides:

(b) No program for settling disputes concerning the transportation of household goods may be approved under this section unless the program is a fair and expeditious method of settling such disputes and complies with each of the following requirements and such regulations as the Commission may issue:

(2) The program provides for adequate notice of the availability of such program, including a concise easy-to-read, accurate summary of the program and disclosure of the legal effects of election to utilize the program. Such notice must be given to persons for whom household goods are to be transported by the carrier before such goods are tendered to the carrier for transportation.

*See also Drucker v. O'Brien's Moving and Storage Inc.*, 963 F.2d 1171, 1174 (9th Cir. 1992) (explaining statutory requirements for award of attorneys' fees).

In this case it cannot be disputed that plaintiff did file her claim within 120 days and that she obviously has prevailed. The only questions remaining therefore are whether a dispute settlement program was available and, if so, whether it was fair and expeditious, and was disclosed to plaintiff *before* she shipped her goods.

While something that might very broadly be described as a "program for settling disputes" did exist, it was never disclosed to plaintiff until long after she shipped her goods. Moreover, it was certainly not fair.

As the court found in connection with the 93A claim, plaintiff was not told of United's arbitration program until several months after her claim was formally denied. Even then, defendant never indicated a willingness to participate in the program. Its existence was merely noted.

The program was summarily described in the "Rights and Responsibilities" brochure that Hilda Holston was supposed to give, but in fact did not give, to plaintiff before the move. Defendant's argument, that the jury's answer to Question I.B. on the special verdict form—to the effect that the award of damages was limited by the $60,000 figure contained in the Bill of Lading—constitutes a binding determination that Holston gave Rini the brochure, is unpersuasive for two reasons.

First, this court is entitled to make its own determination on this point. Rini's certainty that she never got the brochure is far more credible than Holston's indication that she must have given it to Rini because it was her general practice to do so.

Second, it is pure speculation to infer anything about the jury's position on the brochure from the answer to Question I.B. The jury might have decided that damages should be limited simply because Rini's signature on

the Bill of Lading constituted her acknowledgement of the limitation. Or it might have passed over this question without much thought, since it was only awarding $50,000 on the Carmack count anyway.

To sum up this portion of the discussion, Holston never gave Rini the brochure, and Rini only learned of the arbitration program months after her claim was denied. This fact alone is sufficient to entitle Rini to attorneys' fees on her Carmack claim. *Drucker,* 963 F.2d at 1174.

▇ Beyond the lack of timely notification, the program obviously suffers from serious unfairness. The process described involves only "desk arbitration" with no opportunity to present witnesses. This method of dispute resolution would have placed Rini at a tremendous disadvantage since, as United well knew, she lacked contemporaneous documentation regarding the value of her lost items, and, without witnesses, this "desk arbitration" would have relied substantially on paperwork. Moreover, agreement to arbitration required plaintiff to waive any claims for consequential damages and, essentially, adopt United's grossly constricted view of the remedies available to someone in Rini's position. The bulk of the damages justly awarded to Rini in this case would have been lost if she had chosen this approach. Thus, this arbitration alternative was not only undisclosed, it was plainly unfair.

In conclusion, since plaintiff submitted a timely claim and ultimately prevailed, and since she was never properly notified of a fair and expeditious settlement program, she is entitled to attorneys' fees on her Carmack and 93A claims.

The path for determining the appropriate level of fees is by now very well marked. The court must use the "lodestar" formula, first developed in civil rights cases, but now employed in most if not all cases where fee shifting occurs. *See Furtado v. Bishop,* 635 F.2d 915, 920–24 (1st Cir.1980); *Codex Corp. v. Milgo Electronic Corp.,* 541 F.Supp. 1198, 1202 (D.Mass.1982).

▇ Under this approach the court first calculates the appropriate hourly rate for counsel and then multiplies it by the number of hours reasonably expended on the case. This figure then becomes the presumptive fee to be awarded, subject to exceptional circumstances where an upward or downward adjustment may be made.

▇ In this case plaintiff has suggested fee rates, based on the attorneys' varying degrees of experience, of between $100 and $150 per hour for work done between 1992 and 1995.[1] Three affidavits from prominent attorneys in this area have confirmed that these rates are reasonable, and this court finds them to be so. It is to plaintiff's attorneys' credit that they have sought to be paid only at the contemporaneous fee rate charged, rather than the current rate for all hours, as has sometimes been permitted. Defendant will thus be paying at 1992 and 1993 rates in 1995, for much of counsel's work. The qualifications and skill of the three attorneys who participated in the preparation of this difficult case, and the high level of expertise exhibited by the two of these three who actually tried it, more than justify the rates requested.

It is, in fact, hard to understand defendant's objections on this point, since these hourly rates are, if anything, on the low side.

Plaintiff has claimed 1092 hours of attorney time from August of 1992, when she first contacted counsel, through January 7, 1995. With certain reductions in the amounts requested to eliminate unnecessary disputes with defendant, and limiting the fees to Attorneys Neiman, Romano and Pucci, the total amount requested for this period—using the rates set forth above—is $139,243.75. In addition, plaintiff has requested additional fees for 54.75 hours to cover the period following January 7 for supplementary post-trial work, making a total additional fee of $7,706.25.

While it is true that the total fee requested, $146,950.00, is steep, it is fully justified in the specific circumstances of this case. Pre-

---

1. The court has eliminated the $168.75 requested by Attorney Fierst at a rate of $225 per hour for the sake of simplicity.

trial proceedings were extensive, with two rounds of dispositive motions and numerous discovery disputes. Discovery itself was unusually contentious and protracted. The eight-day trial demanded very careful preparation. At the same time, the legal issues in the case were complicated; plaintiff's counsel had to address out-of-circuit decisional law that appeared to be, in flavor if not in substance, adverse to the plaintiff's position. The skillful work of plaintiff's attorneys led directly to the excellent result here. Less thoroughly prepared lawyers probably would have lost this case.

Defendant's specific objections to the reasonableness of the hours claimed are not well founded. The extensive contemporaneous billing records submitted are sufficiently detailed to permit the court to weigh the appropriateness of the kind of work done by counsel at each stage of a case of this sort, and the court has done so. The use of two attorneys to try the case was entirely appropriate and customary, mirroring the fact that defendant itself had two active attorneys at trial, as well as a third present in reserve representing United and available for consultation. United's contention that plaintiff's counsel unfairly complicated the pre-trial and trial process rings particularly hollow; defendant was responsible for more than its share of delay and expense.

In the end, plaintiff seeks fees at very reasonable rates for approximately twenty-eight or twenty-nine weeks of attorney time (assuming a forty-hour work week) for all investigation, drafting of pleadings, discovery, non-dispositive motions, two rounds of dispositive motions, eight days of trial and post-trial work, in a legally and factually complicated case where defendant vigorously contested every point. Viewed in this light the fee requested, while substantial, is fair and reasonable.

■ In making this determination the court is taking into consideration the fact that plaintiff was not successful on her count for intentional infliction of emotional distress and on some aspects of her other counts as well. For example, the court did not permit any non-Carmack claims for misconduct occurring prior to the move and did not permit any claim for punitive damages to be submitted to the jury. Moreover, plaintiff was not successful to the full extent of her claim for damages under the Carmack Amendment for the actual loss of her goods. She was also found to be 30% contributorily negligent on her negligence count.

None of this affects the fee. The unsuccessful claim and the unsuccessful pieces of other claims cannot be severed from the successful claims in any way to permit a rational or fair diminution of fees. They are all inextricably intertwined, legally and factually. Plaintiff would have had to expend precisely the same amount for her lawyers on the claims she has prevailed on, if the others had never been filed.[2]

Finally, on the issue of fees, the court will not award plaintiff any amount to cover fees expended in defending the South Carolina lawsuit. The judge in that case could have weighed the appropriateness of a fee award, if plaintiff had felt it appropriate to submit a petition.

## III. COSTS

■ Plaintiff seeks $9,790.10 for all costs incurred in this case, and has submitted copies of invoices supporting this amount. These costs are reasonable, with the exception of the claim for expert witness fees. As defendant's memorandum points out, expert fees are not to be assessed as costs in federal court beyond the $30.00 per day witness fee. The court will therefore deduct $2,520.50 contained in the invoices dated July 12, 1994,

2. The same intertwining, however, cannot be asserted with regard to the Carmack count and the separate counts for negligence, misrepresentation, and violation of Mass.Gen.L. ch. 93A. Plaintiff and defendant disagreed as to plaintiff's legal entitlement to emotional distress damages under Carmack. The court put a special question to the jury on this point to save the issue, and the jury declined to award any damages for emotional distress with regard to the Carmack count. A significant amount of the preparation and trial of this case was spent on issues unrelated to Carmack. To the extent that any reviewing court would find the observation helpful, it is this court's opinion that, if the negligence, misrepresentation and 93A claims are found to be preempted by Carmack, then plaintiff's attorneys' fees should be reduced by one-half.

December 16, 1994 and January 13, 1995 of plaintiff's Exhibit E to her Affirmation of Services and Costs, covering expert fees, minus the $90.00 fee for her three experts. The amount of costs awarded will be $7,359.60.

### IV. *PRE–JUDGMENT INTEREST*

Plaintiff has sought pre-judgment interest on all aspects of her damage award, fees and costs.

As defendant's memorandum points out, little precedent exists for an award of pre-judgment interest on attorneys' fees and costs, except in civil rights cases. Given the lack of authority the court would not be inclined to award pre-judgment interest on the fees and costs. To the extent that the court may have discretion to add pre-judgment interest, none will be awarded in view of the substantial fee that counsel will already be receiving.

 With regard to pre-judgment interest on the Carmack claim, "there can be no doubt that in this circuit the decision to award pre-judgment interest in a federal question case lies within the sole province and discretion of the jury." *Cordero v. De Jesus–Mendez*, 922 F.2d 11, 13 (1st Cir.1990). Since the pre-judgment interest issue was not submitted to the jury on the federal question claim in this case, none can be awarded on that claim.

The situation is different with regard to the claim pursuant to Mass.Gen.L. ch. 93A. On this claim plaintiff is entitled to pre-judgment interest running from the date of filing the lawsuit until the date of entry of judgment. (Mass.Gen.L. ch. 231 § 6B); *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 716, 563 N.E.2d 188 (1990). This calculation of pre-judgment interest is to be only on plaintiff's actual damages—*i.e.*, the first $100,000—and not the $200,000 punitive portion of the award. *McEvoy Travel*, 408 Mass. at 717, 563 N.E.2d 188.

Post-judgment interest will run on the entire verdict, including costs and attorneys' fees, from the date of entry of judgment. *Foley v. City of Lowell*, 948 F.2d 10, 22 (1st Cir.1991).

### V. *CONCLUSION*

For the foregoing reasons, the plaintiff's Motion for Attorneys' Fees and Costs is ALLOWED. The court hereby awards plaintiff $146,950.00 in attorneys' fees and $7,359.60 in costs. Pre-judgment interest from the date of filing will be awarded on the first $100,000 of the damage award under 93A. Post-judgment interest will run on the entire award, including fees and costs, from the date of entry of judgment.