**ARTHUR D. LITTLE INTERNATIONAL, INC., et al., Plaintiffs,**

v.

**DOOYANG CORPORATION, et al., Defendants.**

**Civil Action No. 94–11875–PBS.**

United States District Court,
D. Massachusetts.

Feb. 13, 1998.

See also, 928 F.Supp. 1189, 979 F.Supp. 919.

Peter J. MacDonald, Hale & Dorr, Boston, MA.

Peter J. MacDonald, Charles P. Kindregan, Hales & Dorr, Boston, MA, Robert L. Weigel, Leslie E. Moore, Leonard Hersh, Lara M. Krieger, Gibson, Dunn & Crutcher, New York City, John A. Donovan, Jr., Mark J. Ventols, Burns & Levinson, Boston, MA.

## MEMORANDUM AND ORDER ON ASSESSMENT OF ATTORNEYS' FEES AND COSTS

SARIS, District Judge.

### INTRODUCTION

This order assessing attorneys' fees and costs comes at the end of the trial court phase of protracted and expensive litigation between two sophisticated corporations disputing a bill for consulting services involving a billion dollar aluminum smelter project in Venezuela that was never built.

On October 25, 1996, a jury awarded the plaintiff consulting firm, Arthur D. Little International, Inc. ("ADL"), $460,000.00 on a claim of breach of contract and rejected all of the contractual defenses and counterclaims of the defendants, Dooyang Corporation and Dooyang America, Inc. (collectively "Dooyang"). Defendants are members of a group of ten associated Korean corporations involved in steel production, real estate development, manufacturing, apparel and international finance. Altogether Dooyang incurred costs of over $9 million in connection with the failed aluminum project, including $2.2 million dollars paid to ADL.

Following the jury verdict, this Court ruled on September 13, 1997 that Dooyang had also violated the Massachusetts Consumer Protection Act, G.L. c. 93A, § 11 ("93A"), by affirmatively misrepresenting its intention to pay for the consulting services rendered by ADL pursuant to that contract in order to forestall litigation and then following a business strategy to use the expense of litigation as leverage to force ADL to compromise its bill. Because of this willful strategy of "commercial extortion," the Court awarded ADL double damages under the statute and ordered the parties to attempt to agree on a reasonable assessment of attorneys' fees and costs. As the parties were unable to reach an agreement, ADL now asks the Court to assess against Dooyang $975,752.00 in attorneys' fees and $206,434.52 in costs.

Dooyang opposes the magnitude of ADL's request for attorneys' fees on five grounds: (1) that ADL should only recover for attorney time logged during the 93A "phase" of litigation following the jury verdict; (2) that ADL's counsel should not recover fees associated with the substantial work on Dooyang's counterclaims; (3) that the billing records of ADL's counsel are inadequate to support the requested award; (4) that ADL's counsel inappropriately includes the time of ADL's general counsel in its fee request; and (5) that the fee request is disproportionately high compared to ADL's initial demand of $460,000.00. Dooyang does not separately state an objection to ADL's request for costs, which include a substantial sum for expert witness fees. After considering the voluminous billing records and related materials submitted by the parties, the Court **ORDERS** Dooyang to pay ADL $915,707.00 in attorneys' fees and $206,434.52 in costs.

### BACKGROUND

The facts of this dispute are detailed in the Court's two published opinions in this lengthy and acrimonious case. *See* 928 F.Supp. 1189 (D.Mass.1996) (mem. and order allowing in part and denying in part ADL's motion for summary judgment) ("*ADL I*") *and* 979 F.Supp. 919 (D.Mass.1997) (findings of fact, conclusions of law, and order of judgment) ("*ADL II*"). Here, the Court only reviews the procedural history of the case and summarizes the fee and cost request as background for the Court's determination of what assessment is "reasonable" given the particular facts of the case.

ADL, represented by Hale and Dorr LLP of Boston, sued Dooyang in state court in

August 1994 to recover $460,000.00 in unpaid fees on the last of several contracts for consulting services rendered on the aluminum smelter project. ADL proceeded on theories of breach of contract, fraud and unfair and deceptive trade practices in violation of 93A, but it voluntarily dismissed its fraud claims on the eve of trial. The 93A claim was premised on Dooyang's breach of contract having risen to a level of "rascality" because Dooyang re-enlisted the services of ADL in April and May 1991 without an intention to pay and then continuously misrepresented its intention to pay for the next several years.

Dooyang, represented by Gibson, Dunn & Crutcher LLP of New York and, locally, by Burns & Levinson of Boston, removed the case to federal court in September 1994. Dooyang answered that it had a legal excuse not to pay and asserted five counterclaims: (1) that ADL fraudulently induced Dooyang into signing the first of a series of consulting agreements on June 2, 1989 and made continuous fraudulent misrepresentations to Dooyang thereafter so that it would retain ADL's services; (2) that ADL made negligent misrepresentations to the same end; (3) that ADL negligently failed to provide Dooyang "with accurate and complete information" about the Venezuelan aluminum project; (4) that ADL breached the contract by failing to use "best efforts;" and (5) that ADL, not Dooyang, violated 93A through the unfair and deceptive business practices contained in the other four counterclaims.

The parties engaged in extensive discovery and litigated several discovery disputes before this Court and a Magistrate Judge. Later, ADL moved for summary judgment on Dooyang's counterclaims. Though ADL's motion was allowed only as to Dooyang's fifth counterclaim (93A), the scope of potential recovery on three of Dooyang's other four counterclaims was narrowed by the Court's order. See ADL I, 928 F.Supp. at 1204, 1205 & 1208. An eighteen-day jury trial on all remaining claims and counterclaims, except ADL's 93A claim, concluded with a verdict on October 25, 1996. The jury rejected all of Dooyang's defenses and counterclaims and found in favor of ADL on its single breach of contract claim.

The parties agreed that the Court should resolve ADL's 93A claim based on the trial record and additional documentary evidence and deposition transcripts. The Court heard oral argument on December 16, 1996, and further memoranda were submitted to the Court on the 93A issue both before and after that hearing. The Court issued its order of judgment in favor of ADL on its 93A claim and awarded double damages, attorneys' fees and costs on September 19, 1997. See ADL II, 979 F.Supp. at 928. In doing so, the Court specifically indicated that though it agreed that Dooyang had deceptive intent both when it entered into the final contract and throughout the course of the period of non-payment, its intent not to pay upon entering the final contract was not actionable under 93A because it did not occur substantially and primarily within the Commonwealth of Massachusetts. See id. at 926. The Court awarded double damages for the willful and knowing nature of the 93A violation; it awarded double, rather than treble, damages largely based on its view of the parties' entire business relationship, which included ADL's conflict of interest in consulting for both Dooyang and an arm of the Venezuelan government considering competitive bids from Dooyang and several other companies (e.g.ALCOA). See id. at 928.

In support of its request for attorneys' fees, ADL has submitted to the Court an accounting of legal services amounting to more than 3300 hours in attorney time and more than 900 hours in paralegal time. The computer-generated compendium of diary sheets is 111 pages long and includes well over one thousand detailed entries listing attorneys' names, dates, hours spent and a description of services rendered. The total sum of legal fees billed by Hale and Dorr to ADL on this case is $939,752.50. The vast majority of attorney time (2808 hours) was billed by two attorneys: the case's principal trial attorney, who is a "senior partner" who began working in Hale and Dorr's litigation department in 1984, and a "junior partner" who has worked there since 1990. The rest of the fees requested are for services rendered by an assortment of junior attorneys and paralegals. The Hale and Dorr bill for services rendered includes $6,709.00 assessed for the compilation of the bill itself. Only the senior partner was present for each day of

trial; he was accompanied at counsel table by ADL's general counsel, whose time during the trial is separately valued at $36,000.00 in the request for fees.

ADL's request for costs, which Dooyang does not challenge, is independently quite large at $206,434.52. Included in that amount is $94,009.06 in professional service fees and expenses for three expert witnesses utilized by ADL in the course of the litigation, $23,570.44 in filing fees and transcription services, $4,106.15 in Korean translation costs, $15,849.65 in trial presentation costs, and $68,899.22 in miscellaneous other costs (such as travel, photocopying, computerized research, courier services, etc.).

## DISCUSSION

Chapter 93A requires the Court to award reasonable fees and costs to ADL as the prevailing party:

> If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action.

G.L. c. 93A, § 11. "The purpose of the chapter 93A § 11 attorney's fees provision is to deter businesses from engaging in unfair and deceptive trade practices where those trade practices have adverse effects." *NASCO v. Public Storage, Inc.*, 127 F.3d 148, 154 (1st Cir.1997) (citing *Commonwealth v. Fall River Motor Sales, Inc.*, 409 Mass. 302, 316, 565 N.E.2d 1205 (1991)).

■ The Court is required to make "concrete findings" which "supply a clear explanation of the reasons undergirding a particular fee award." *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 842 (1st Cir. 1990). Relevant considerations include "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum v. Archambault*, 379 Mass. 381, 388–89, 398 N.E.2d 482 (1979), *overruled in part on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 418 Mass. 737,

743, 640 N.E.2d 1101 (1994). "No single factor is necessarily dispositive of the services' worth." *Star Fin. Servs., Inc. v. AAS-TAR Mortgage Corp.*, 89 F.3d 5, 16 (1st Cir.1996). Ultimately, "the fee-shifting anodyne focuses on 'what [counsel's] services were objectively worth.'" *Peckham*, 895 F.2d at 842 (alteration in original) (quoting *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 629, 382 N.E.2d 1065 (1978)). The amount of the award "is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324, 613 N.E.2d 881 (1993).

■ Having lived with this case since its removal to federal court in September 1994, the Court is intimately familiar with the nature of this litigation, including specifically the work done by the attorneys over three years. Though more particularized "concrete findings" are indicated below, it is worth noting at the outset the following conclusions of the Court relevant to the *Linthicum* factors: (a) that the case, from beginning to end, involved complex legal problems and challenging factual discovery; (b) that *both* sides devoted herculean efforts to the case, as perhaps best evidenced by over 200 entries in the Court's docket; (c) that large sums of money were at stake, and the parties, both large sophisticated companies, were aware of those stakes; (d) that both sides were represented at all times by skilled, reputable and experienced attorneys from prominent law firms in the high-priced Boston and New York markets; and (e) that the result obtained by ADL's counsel was virtually total victory.

For purposes of clarity, the Court arrives at its determination of a reasonable award of attorneys' fees by addressing Dooyang's objections separately.

### 1. *Recovery Is Justified for Entire Period of Litigation.*

■ Rather than attacking the quantity or quality of the work of ADL's counsel, Dooyang's theory of reduction relies on the cabining off of entire sections of this litigation

from the Court's consideration. Its first suggestion is that the Court should draw a line at the day of the jury verdict because, in Dooyang's view, the work on the 93A claim by ADL's counsel occurred only after the jury portion of the bifurcated trial. Dooyang bases its position on the October 28, 1996 time sheet entry of ADL's senior trial lawyer, who wrote on that day, "Begin work on 93A issues...; begin process or [sic] assembling 93A evidence for submission to court." (Macdonald Aff. Ex. A at 105.)

The fundamental problem with Dooyang's argument is that the proceedings prior to the jury verdict were intertwined with the issue of whether or not a violation of 93A occurred. "As a rule, where a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary." *Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 849 F.Supp. 820, 826 (D.Mass.1994) (citing *Simon v. Solomon*, 385 Mass. 91, 112, 431 N.E.2d 556 (1982)), *rev'd on other grounds*, 44 F.3d 40 (1st Cir.1995); *see also DiMarzo v. American Mutual Ins. Co.*, 389 Mass. 85, 106, 449 N.E.2d 1189 (1983). In fact, 93A claims are typically based on an underlying common law claim, and attorneys' fees may be assessed for all "phases" of litigation. *See, e.g., Homsi v. C.H. Babb Co.*, 10 Mass.App.Ct. 474, 475 & 481, 409 N.E.2d 219 (1980) (affirming trial court's finding of a 93A violation after a jury verdict on a breach of contract claim and awarding fees for "each of the many matters involved in the preparation for the case"); *Rini v. United Van Lines, Inc.*, 903 F.Supp. 234, 237 (D.Mass. 1995) (relying on jury's verdict on common law negligence and misrepresentation in deciding that a violation of 93A occurred and then awarding fees for the entire period of the litigation).

As a general matter, then, work performed by ADL's counsel in pressing ADL's contract claim prior to the jury verdict on October 25, 1996 is includable in the fee award. The Court's conclusion that Dooyang violated 93A was a judgment about the manner in which Dooyang breached its contract with ADL, and thus it views the claims as arising from "a single chain of events." The Court specifically held that Dooyang's "bad faith behavior when ADL attempted to enforce the contract constitutes a breach of the duty of good faith and fair dealing in violation of Chapter 93A." *ADL II*, 979 F.Supp. at 925 (citing *Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*, 788 F.Supp. 54, 61 (D.Mass.1991)). Therefore, legal work on ADL's claims before the jury verdict cannot be segmented in any rational manner from work on its claims after the verdict.

### 2. *Work on Counterclaims is Includable.*

Dooyang contends, alternatively, that the lion's share of attorney work performed on the case prior to the jury verdict centered on Dooyang's five counterclaims and that all such work should be excluded from the fee award. Though no court has squarely addressed this issue under 93A, the case law actually suggests that attorney work by the 93A plaintiff defending against counterclaims should be included as part of the award. *See Homsi*, 10 Mass.App.Ct. at 475 & 481, 409 N.E.2d 219 (affirming fee award for whole case, which included a jury's rejection of defendant's counterclaim). In making its argument, Dooyang attempts to place this case within the province of the rule that 93A "authorizes the award of legal fee 'incurred in connection with said action,' ..., but not for other actions." *Miller v. Risk Management Found.*, 36 Mass.App.Ct. 411, 421, 632 N.E.2d 841 (1994).

The rule referred to by Dooyang focuses not on a 93A plaintiff's work on defendant's counterclaims but rather on unsuccessful, non-interconnected claims brought by the plaintiff in conjunction with the 93A action. "The caselaw suggests if a plaintiff prevails on some, but not all, of his claims, *and there is no interconnection*, the fee award might be limited to the time spent regarding the proven chapter 93A violation." *Peckham*, 895 F.2d at 841 (remanding case for explanation of fee award where jury had rejected plaintiff's common law bad faith and breach of contract claims but judge found for plaintiff on 93A claim itself) (emphasis added); *see also Miller*, 36 Mass.App.Ct. at 422, 632 N.E.2d 841 (discounting from 93A fee assessment work done on a separate action in another court and on an unsuccessful claim that defendant was liable under a different

chapter of Massachusetts law); *Equitable Life Assurance Soc'y v. Porter–Englehart,* 867 F.2d 79, 91 (1st Cir.1989) (discounting work done on unsuccessful portion of plaintiff's claim for insurance coverage); *Industrial Gen. Corp.,* 849 F.Supp. at 827 (discounting work related to a failed breach of contract claim from a 93A attorneys' fee award).

Consequently, the rule does not support Dooyang's argument regarding work on the counterclaim defense. Here, counsel's work on the Dooyang counterclaims was both interconnected with the 93A claim *and* successful. Dooyang's counterclaims were the flipside of its defense of legal excuse to the performance of contract, and ADL logically had to succeed in rebutting the counterclaims to succeed on its breach of contract claim and, ultimately, on its 93A claim. Dooyang's counterclaims that ADL (1) breached the consulting contract by not using "best efforts," (2) was negligent in failing to provide Dooyang "with accurate and complete information," and (3) engaged in a course of fraudulent representations to perpetuate the consulting relationship are nothing more than excuses, *not* accepted by the jury, as to why Dooyang should not have had to pay the $460,000.00. The same can be said of Dooyang's negligent misrepresentation counterclaim, which merely "mirror[ed] the [counter] claims of breach of contract and negligence." *ADL I,* 928 F.Supp. at 1205.

Furthermore, Dooyang actually presented its counterclaims to the Court and jury as its side of the story rather than as unrelated claims which happened to be consolidated in the same action. (*See, e.g.,* Dooyang's Proposed Jury Instr. Nos. 19–21.) Dooyang cannot, on the one hand, urge the jury and the Court to consider its counterclaims as stating legal justifications for its not paying ADL when arguing the merits of its case and, on the other hand, posit in their opposition to ADL's attorneys' fee request that ADL's 93A claim and Dooyang's counterclaims bear no relation to one another. *See Krewson v. City of Quincy,* 74 F.3d 15, 19 (1st Cir.1996). Attorneys' fees are justified for work on Dooyang's counterclaims because the "same conduct that warranted" a finding of breach of contract by the jury warranted a rejection of all of Dooyang's counterclaims

and was relevant to the court's ultimate conclusion that Dooyang engaged in unfair and deceptive acts or practices for refusing to pay a bill without a good faith legal basis. *See Jet Line Servs., Inc. v. American Employers Ins. Co.,* 404 Mass. 706, 717, 537 N.E.2d 107 (1989). Dooyang expanded exponentially the monetary stakes of this litigation by pressing the flip side of ADL's claims through its counterclaims; ADL was successful in rebuffing this effort as part and parcel of its victory. The facts of this case and the policies of 93A strongly counsel against any reduction for work on counterclaims because of the ballooning of this case that occurred because of Dooyang's unsuccessful attempt to avoid liability under the contract. *Cf. NASCO,* 127 F.3d at 154.

The rule of law regarding unsuccessful claims is, however, relevant to ADL's fee request on a related point not pressed by Dooyang. The Court held in *ADL II* that Dooyang's "first act of deception" was not actionable under 93A because it did not occur "substantially and primarily" in Massachusetts. 979 F.Supp. at 926. The principle of interconnectedness forces the conclusion that a reduction of fees for ADL's unsuccessful theory of 93A liability is inappropriate for work *prior* to the jury verdict because the failed theory was factually and legally interconnected with the rest of the case during that time. *See Rini,* 903 F.Supp. at 238 (declining to sever an "unsuccessful claim and the unsuccessful pieces of other claims" from a 93A fee award where they "were all inextricably intertwined, legally and factually"); *cf. Lipsett v. Blanco,* 975 F.2d 934, 940–41 (1st Cir.1992) (including work performed on unsuccessful claim in a civil rights case where separation would be an "exercise in futility"). Though ADL was ultimately unsuccessful in relying upon the first act of deception as an independent basis for its 93A award, it successfully used proof of the first act of deception to defend against Dooyang's counterclaims by showing that it was Dooyang, not ADL, that had engaged in fraudulent behavior. As a result, any type of reduction here not only would be rationally impossible but also would ignore the fact that the theory served a dual role in the case. Again, ADL's statutory recovery of attor-

neys' fees should not be reduced to exclude essential work done to combat Dooyang's vast expansion of the case through counterclaims that did not succeed.

■ However, a reduction in ADL's fees is appropriate for the period *after* the counterclaims were eliminated from the case. Once the issues in the case were narrowed by the jury verdict, ADL continued to advance both acts of deception as independent grounds for an entry of judgment in its favor under 93A. During this period, it is possible to dissect the 93A claim into portions to assess meaningful legal work associated with the successful part. This phase of the litigation, unlike the earlier phase dominated by the counterclaims, is analogous to cases that have reduced fee awards for unsuccessful portions of 93A claims. *See, e.g., NASCO,* 127 F.3d at 154 (affirming 80% reduction in plaintiff's fee request because only a small portion of the conduct complained of constituted a 93A violation); *Equitable Life,* 867 F.2d at 91 (remanding for reduction in fee award because successful 93A theory represented only a fraction of meaningful litigation); *Industrial Gen. Corp.,* 849 F.Supp. at 827 (discounting work done on unsuccessful portion of 93A claim). As such, the Court will discount the attorney billings of ADL's counsel for the period between the jury verdict and the date of the issuance of the 93A order by one-half, from $43,796.00 to $21,898.00.

■ Dooyang seems also to suggest that the Court's decision to double, rather than treble, the damages against it merits a reduction in ADL's fee award. The two determinations, however, are entirely unrelated and, to the extent Dooyang relies on this argument as a ground for fee reduction, the Court rejects it. The Court's decision not to value the egregiousness of Dooyang's conduct at the highest end of the statutory scale of damages is a decision independent from the simple judgment that ADL was successful in pressing a 93A claim and, therefore, receives attorneys' fees as a matter of law. *See Homsi,* 10 Mass.App.Ct. at 481, 409 N.E.2d 219 (awarding attorney's fees for all work done by plaintiff's counsel on the case

despite the fact that judge did not award *any* damages for 93A claim above and beyond that awarded by jury on underlying common law claim); *cf. Rex Lumber Co. v. Acton Block Co.,* 29 Mass.App.Ct. 510, 522, 562 N.E.2d 845 (1990) (separating rationale used when multiplying damages from that used when assessing fees and costs); *Equitable Life,* 867 F.2d at 91 (awarding attorney's fees to prevailing plaintiff notwithstanding the court's decision that multiple damages were unjustified).

### 3. *Time Records of ADL's Counsel Are Adequate.*

■ Dooyang, rather than challenging the billing rates or time spent by any attorney or paralegal on any given task, attacks Hale and Dorr's billing records as inadequate because they "make no effort to break out or apportion the time spent on the Chapter 93A claim." Dooyang's creation of a legal requirement to refer specifically to 93A in diary entries is far-fetched at best, but, regardless, the Court's conclusion above that the claims and counterclaims are intertwined defeats the adequacy-of-records challenge. Though the total dollar amount of the legal fees is admittedly steep, and the recent increase in the hourly rates substantial, the Court does not find the unopposed hourly rates [1] charged to be incommensurate with those charged by other prominent Boston law firms in commercial litigation. *Cf. Damon v. Sun Co.,* 87 F.3d 1467, 1487 (1st Cir.1996) (affirming without discussion a fee award calculated at $235 per hour). Although it does challenge the adequacy of the record-keeping, Dooyang's brief is conclusory and without specific examples to prove its point. The Court concludes that the time records kept by ADL's counsel "adequately [delineate] the different tasks performed, the nature of the work, the time consumed, and the dates when effort was expended." *Lipsett,* 975 F.2d at 938 (civil rights action).

■ The only specific challenge Dooyang makes to the calculation of fees by ADL's

---

1. Dooyang does not challenge the hourly rates, and I find them reasonable. The lead counsel, a 1984 law school graduate and litigation partner, billed at $260 an hour in 1994; this increased to $325 an hour in 1996. The other billing attorney is a junior partner who graduated from law school in 1989. His hourly rate increased from $170 an hour to his current rate of $275 an hour.

counsel refers to the compilation of the fee request itself. Here, the Court agrees that ADL's request for $6,709.00 is excessive. *See United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 18 n. 6 (1st Cir.1988) (reducing fees billed for work on a fee petition because the First Circuit has "regularly encouraged district courts to use lower rates for such drudge work"). Together, ADL's two attorneys billed $6,442.50 for 21.9 hours of work (at rates of $325 and $275 per hour), and a paralegal billed $266.50 for 4.1 hours (at a rate of $65 per hour). While the Court accepts the paralegal's rate, it reduces the attorneys' bill by one third. *See id.* (approving a one-third reduction for work on a fee petition). The Court therefore reduces the portion of the award for the compilation of the fee request itself by $2,147.50 to a reasonable assessment of $4,561.50.

Dooyang also challenges the award of any monies expended in ADL's unsuccessful opposition to a motion to compel before Magistrate Judge Bowler but does not propose any specific fee reduction. The Court has an insufficient basis for any such reduction based on the bills or any affidavits.

### 4. *Fees of ADL's General Counsel Should Not Be Included.*

■ Dooyang seeks to eliminate the fees charged by ADL's general counsel on the grounds that the work was duplicative and that he was merely the client, a "visible embodiment of ADL." While the general counsel did come to sidebar, to the best of my memory, he rarely (if ever) said anything and conducted none of the examinations. He made no oral arguments, and participated at most in discussions of settlement. The Court agrees that ADL should not be reimbursed for the time of its general counsel, who does not "bill" ADL but rather is an employee of the company. Furthermore, the hours billed and rate assessed is speculative and undocumented. The $36,000.00 attributed to him will be deducted from the fee request.

### 5. *Fees Are Not Unreasonable Due to Nature of Litigation.*

■ Dooyang's final objection to ADL's fee request is that it is "unreasonable in relation to the amount at issue." The award of attorneys' fees to the successful 93A claim-

ant is mandatory "irrespective of the amount in controversy." G.L. c. 93A, § 11. Fees awarded pursuant to Massachusetts statutory authority must not necessarily be reduced because they are high in relation to the award of damages. *See Homsi*, 10 Mass. App.Ct. at 481, 409 N.E.2d 219 (emphasizing that the amount of the fee award is not driven by the amount in controversy when it affirmed a fee award greater than damage recovery); *Krewson*, 74 F.3d at 18. On the other hand, the Court "need not feel handcuffed by counsel's submission of time records, no matter how elaborate." *Metropolitan Dist. Comm'n*, 847 F.2d at 17–18 ("[T]he law firm's bill need not be swallowed whole by the client's litigation adversary just because it is the law firm's bill.").

The Court specifically finds that the amount of work performed by ADL's counsel was reasonable because Dooyang does not object to hours spent or rates charged and because of the "Stalingrad" defense mounted by Dooyang. One barometer of the high pressure nature of the litigation was the 100–page, 400–paragraph second amended answer and counterclaim. "[B]ecause a litigant's staffing needs and preparation time will often 'vary in direct proportion to the ferocity of [its] adversaries' handling of the case, this factor weighs heavily in the balance.'" *Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (Title VII case) (quoting *Lipsett*, 975 F.2d at 939); *see also Rini*, 903 F.Supp. at 237–38 (concluding that "steep" fee request was "justified" due to the "extensive" pretrial proceedings, "contentious and protracted" discovery, and "complicated" issues involved in an eight-day trial).

Because the litigation was prolonged and complex, this is not a case in which the amount of time billed and money charged by ADL's attorneys was plainly "excessive." *Cf. Rex Lumber*, 29 Mass.App.Ct. at 521, 562 N.E.2d 845 (reducing fee award for a two and one-half day trial on "a straightforward contract case with a single issue dividing the parties"); *Star Fin. Servs.*, 89 F.3d at 16 (affirming reduction of fee award by district court due to "simplicity of the case"); *Industrial Gen. Corp.*, 849 F.Supp. at 827 (reduc-

ing fee award in a case which "presented no novel legal issues or complex facts" yet which was "disturbingly overlawyered"). Instead, based on the facts of this case, the Court concludes that ADL's request, minus the reductions explained herein, represent what the services of its attorneys "were objectively worth." *Peckham*, 895 F.2d at 842.

### ORDER

The Court hereby **ORDERS** Dooyang to pay ADL the following assessment of reasonable attorneys' fees and costs pursuant to Mass.G.L. c. 93A, § 11:

(A) attorneys' fees of $915,707.00, representing the total requested by ADL less: (i) $21,898.00 for work on the unsuccessful theory of 93A liability *after* October 25, 1996; (ii) $36,000.00 for the time of ADL's general counsel; and (iii) $2,147.50 for excessive fees charged while compiling the fee request;

(B) costs of $206,434.52 as requested by ADL without objection from Dooyang.